# STATE EX REL. VILLAGE OF ORONO v. VILLAGE OF LONG LAKE.

77 N. W. (2d) 46.

May 11, 1956—No. 36,648.

*John S. Pillsbury, Jr.,* and *Faegre & Benson,* for relator.

*Charles S. Bellows* and *Best, Flanagan, Lewis, Simonet & Bellows,* for respondent.

FRANK T. GALLAGHER, JUSTICE.

This is a proceeding in the nature of quo warranto instituted in this court by the village of Orono, herein referred to as Orono, against the village of Long Lake, described as Long Lake, to determine the validity of the purported annexation to Long Lake of certain tracts of land hereinafter referred to as Tracts "B," "C-1," "C-2," and "C-3," all of which lie within a larger area of land constituting the former town of Orono.

At about the same time that the purported annexation proceedings were commenced in the Long Lake matter, proceedings were also started and ultimately concluded to incorporate as a village the area of land constituting the former town of Orono, including said tracts B, C-1, C-2, and C-3. It is therefore the position of Orono that the validity of the purported annexation of the above tracts by Long Lake depends upon whether the annexation proceedings were validly commenced before or after the institution of the incorporation proceedings in the Orono matter. In order to better explain the situation, we shall set out the proceedings in chronological order.

With reference to Orono, between August 2 and September 7, 1954, certain voters of the former town of Orono took a census of the area constituting the entire town as it then existed with the purpose of incorporating said area as a village. In taking such census they included among the persons counted those residing on tracts B, C-1, C-2, and C-3, inasmuch as those tracts were a part of a larger area constituting the then town of Orono. On September 24, 1954, a petition was executed for the incorporation of that area which requested the board of county commissioners of Hennepin County to call an election on the question of incorporation and to fix a date for such an election. The area was described in the petition as follows:

"The said land is bounded on the north by the Township of Medina; on the East by the Township of Plymouth and the City of Wayzata; on the South by the Township of Excelsior; and on the West by the Village of Mound, the Township of Minnetrista and the Township of Independence, except such territory within said boundaries embraced within the limits of the Village of Long Lake, the Village of Spring Park and the Village of. Minnetonka Beach."

On October 7, 1954, the petition and census list, together with a letter of transmittal, were submitted to the board of county commissioners of Hennepin County by filing the same with the county auditor who is the clerk of the county board.

On October 13, 1954, at the first meeting of the board of county commissioners after the filing of these papers, the board adopted a resolution approving said petition and setting the date of November 9, 1954, for an election on the question of incorporation of Orono. The election was held on that date and a majority of the voters voted in favor of incorporation. On November 10, 1954, the certificate of election was filed with the county auditor and on November 23, 1954, a certified copy of the incorporation document was filed with the secretary of state.

All of the above described proceedings were conducted pursuant to and in compliance with M. S. A. 412.011.

In connection with the Long Lake annexation matter, a document purporting to be a petition for the annexation of certain unplatted lands constituting tracts B, C-2, and C-3, signed by a majority of the owners thereof, was filed with the village clerk of Long Lake on September 24, 1954 (Long Lake Exhibit 3). Shortly after that exhibit was filed, tract C-3 was stricken for the reason that said tract made the total acreage included in the alleged petition greater than the statutory limit of 200 acres, and for the further reason that the owners of said tract C-3 had not signed the Long Lake purported petition. In addition a number of the owners of other parcels of land included within the territory of the petition covered by Long Lake Exhibit 3, who had not signed the petition at the time of its filing, added their signatures subsequent to its filing and subsequent to October 7, 1954, the date that the Orono incorporation was filed, but prior to October 11, 1954, the date Long Lake adopted its ordinance No. 45 purporting to annex tract B.

No posted notice of hearing on the Long Lake annexation petition covering tracts B, C-2, and C-3, was ever given or attempted. However, a notice of hearing to be held on October 11, 1954, describing only tracts B and C-2 was published on September 29, 1954.

On October 11, 1954, Long Lake adopted ordinance No. 45 purporting to annex only tract B. Tract C-2 was excluded from the property described in ordinance No. 45 because the owner of said tract had not signed the petition, thus leaving only tract B within the ordinance which was subsequently filed with the county auditor and secretary of state as required by law.

On September 27, 1954, a document purporting to be a petition for annexation of other unplatted lands was filed with Long Lake (Long Lake Exhibit 10). The referee found that when filed this petition had a description of the area and a map attached, but the description and map have been lost. All of the owners whose property was described in the petition had signed it at the time it was filed. The territory described in Exhibit 10 is part of the land described as tract C-1 herein. The owners of the balance of the land

in tract C-1 whose territory was not included in the description in Exhibit 10 and who had not signed said petition were Hazel Johnston Smith, Dorothy M. Holland, and E. Morton Holland.

On November 1, 1954, there was filed with Long Lake a document (Long Lake Exhibit 15) signed by Dorothy M. Holland and E. Morton Holland requesting that the land owned by them, constituting a part of tract C-1, be annexed to the village.

On November 1, 1954, another petition (Long Lake Exhibit 14) was filed with Long Lake, signed by Hazel Johnston Smith, requesting that the land owned by her in tract C-1 be annexed to Long Lake. No posted notice of hearing on those petitions (Long Lake Exhibits 10, 14, 15) was ever given or attempted. A notice of hearing to be held November 1, 1954, describing tract C-1 and including the Holland property (Long Lake Exhibit 15) but excluding the Smith property (Long Lake Exhibit 14) was published on October 21, 1954.

On the date of said publication, Long Lake received a letter from Rodney and Nancy Johnson requesting the annexation of their property, tract C-2, to Long Lake. On November 1, 1954, a formal petition signed by F. Peavey Heffelfinger and Elizabeth Heffelfinger requesting the annexation of their property, tract C-3, to Long Lake was filed with its clerk.

On the date of the filing of the Heffelfinger petition, November 1, 1954, Long Lake adopted its Ordinance No. 47 purporting to annex tracts C-1, C-2, and C-3 to Long Lake, which ordinance was later filed with the county auditor and the secretary of state as required by law.

Previous to the passing of Ordinance No. 47, and on October 18, 1954, the Union Cemetery, a corporation, filed a formal petition with the village clerk requesting that the cemetery be annexed to the said village and on that same date the village council of Long Lake passed its Ordinance No. 46 purporting to annex the cemetery. While Orono made no attack on the cemetery annexation by any allegation in the writ of quo warranto, the referee, over Orono's objections, admitted evidence thereon and made findings of fact and conclusions of law to the effect that the incorporation proceedings

of Orono had commenced before the cemetery petition was filed with Long Lake and therefore Orono had jurisdiction over the cemetery tract.

All of the foregoing annexation proceedings were allegedly conducted in compliance with and pursuant to M. S. A. 412.041.

It should be noted that tracts B, C-1, and the cemetery abut on Long Lake as it existed prior to any of the proceedings herein discussed and that tracts C-2 and C-3 abut on tract B. It is thus apparent that tracts C-2 and C-3 did not abut on said village as it then existed unless the annexation of tract B was valid. It should further be noted that all of the lands involved in the annexation proceedings were included within the boundaries of the land involved in the Orono incorporation proceedings described herein unless they had been validly annexed to Long Lake prior to the time of the election, in which case they would be excluded from the land described in the incorporation election.

In any event, none of the owners of the tracts above referred to in the annexation petitions and proceedings voted in the election on the Orono incorporation held on November 9, 1954, although they were in no way excluded from so voting.

The Supreme Court appointed a referee to hear and report the evidence and make and report findings of fact and conclusions of law. The referee concluded that Ordinances Nos. 45, 46, and 47 of Long Lake were null and void; that Long Lake had no lawful jurisdiction over tracts B, C-1, C-2, and C-3, and the Union Cemetery tract; and that Orono had the sole municipal jurisdiction over said tracts. He further concluded that Orono was entitled to a writ ousting Long Lake and its duly elected officials from exercising any jurisdiction over said territory. The referee based his decision on the grounds that certain of the signatures on the first petition filed with Long Lake (Long Lake Exhibit 3) were added to said petition after the date of the commencement of the Orono incorporation proceedings and that certain of the petitions concerning parts of the lands involved in Ordinances Nos. 46 and 47 were filed after the date of the commencement of the incorporation proceedings.

The two issues raised by Orono are:

(1) Whether under the rule of priority established by this court in the case of State ex rel. Harrier v. Village of Spring Lake Park, 245 Minn. 302, 71 N. W. (2d) 812, the proceedings for the incorporation of Orono had priority over the proceedings by Long Lake for the annexation of tracts B, C-1, C-2, and C-3, referred to herein, which said tracts of land were contained within the larger area sought to be incorporated by the incorporation proceedings and whether, therefore, said annexation proceedings were void.

(2) Whether under § 412.011 it is the filing of the petition for incorporation with the board of county commissioners, giving the county board jurisdiction over the incorporation proceedings, which determines priority and precludes subsequent proceedings for annexation of any tracts of land included within the area subject to the incorporation proceedings or whether it is the institution of the incorporation proceedings by the doing of the first public procedural steps required by the statute, namely, the taking of the census, which determines the priority of the incorporation proceedings.

The referee made findings of fact and conclusions of law in favor of Orono on Issue I, and found it unnecessary to make a decision on Issue II.

■ We shall first consider Issue I. Counsel for Orono and Long Lake both cite our recent decision in State ex rel. Harrier v. Village of Spring Lake Park, *supra,* as controlling under the facts of this case. We held in that case that two municipal authorities trying to exercise jurisdiction over the same area cannot both prevail, and that exclusive jurisdiction vests in the municipal authority which first acts validly under the power granted. In other words, we held that the municipal authority which first institutes valid proceedings under the power granted by the statutes has the exclusive jurisdiction over the area in question. At first glance, therefore, it would appear that the proceedings for annexation which commenced on September 24, 1954, with the filing of an annexation petition with Long Lake would have priority over the proceedings for the incorporation of Orono which commenced on October 7, 1954, with the

filing of the petition and census list with the Hennepin County board of county commissioners.

However, it must be noted that throughout the opinion in the Spring Lake Park case we asserted as a prerequisite to the priority rule that the proceedings in question must be validly commenced and carried on. For instance, we quoted with approval the Supreme Court of Wisconsin in In re Incorporation of Village of St. Francis, 208 Wis. 431, 433, 243 N. W. 315, 316, as follows:

"* * * If those who are attempting to direct the course of the two movements have in each instance met the statutory requirements in notice, application, survey, and other details of the proceedings required by law, the movement first started has the right of way."

In the instant case Orono contends that the Long Lake proceedings for annexation were not validly commenced and performed and that therefore even though they were commenced prior in time to the incorporation proceedings they do not have the exclusive jurisdiction over the lands in question.

M. S. A. 412.041 pertains to the annexation of territory. Subdivision 4 of that section reads as follows:

"Petition for inclusion; ordinance, leasing. If the land is platted or, if unplatted, does not exceed 200 acres, the owner or a majority of the owners may petition the village council to have such land included within the village. If the council determines that the annexation will be to the best interests of the village and of the territory affected, it may by ordinance declare such land annexed to the village, but if the petition is not signed by all the owners of the land proposed to be annexed, the ordinance shall not be passed until the council has held a hearing on the proposed annexation after at least 30 days' posted notice."

In the instant case the first petition filed with Long Lake (Long Lake Exhibit 3) was not signed by all of the owners of tracts B, C-2, and C-3, included within the purview of the petition at the time it was filed. In addition to this the land referred to in the petition included more than the statutory maximum of 200 unplatted acres.

It was pursuant to this petition that Long Lake subsequently passed Ordinance No. 45 annexing only tract B to the village.

As we have pointed out, all the owners of the lands included within tract B had signed the petition by the time said ordinance was passed. The question arises as to whether the requirement of the statute for 30 days' posted notice should have been followed by Long Lake in view of the fact that at the time the petition was filed all of the owners of tract B had not signed. We believe that under the facts and circumstances here the failure to have 30 days' posted notice of hearing is not a sufficient ground on which to hold the proceedings with respect to this petition invalid. The fact that all of the owners of the lands included within tract B had signed said petition by the time the ordinance was passed appears to us to constitute a sufficient compliance with the intent of the statute. The requirement for posted notice is for the protection of the landowners themselves. It offers an opportunity for all concerned to learn of the pending annexation proceedings and to voice any objections they may have. When all owners have signed the petition by the time the ordinance is passed and therefore have consented to the proposed annexation, this requirement is satisfied and renders unnecessary the statutory requirement of posted notice of hearing.

However in considering the validity of this petition with respect to the amount of land contained therein when the petition was filed, we face a more serious problem. As we have previously stated, the petition, when filed with Long Lake, included within the description of the properties listed more than 200 acres of unplatted land. Some of the land listed in the petition was later stricken because the owners thereof had not signed the petition and also because it was desired to bring the total amount of acreage within the 200-acre limitation of the statute.

In In re Dissolution of School District No. 33, 239 Minn. 439, 448, 60 N. W. (2d) 60, 66, a case involving a petition for the dissolution of a functioning school district and for the subsequent attachment of its territory to another existing school district, we said:

"* * * Although § 122.28 [the statute involved in that case] does not prescribe what must be contained in a petition, nevertheless, by necessary implication the school district sought to be dissolved *must as a jurisdictional prerequisite be described with sufficient accuracy and completeness that neither the board of county commissioners nor any other interested party is misled as to which district is meant.*" (Italics supplied.)

We have reached the conclusion that the amendment of the petition (Long Lake Exhibit 3) in the instant case, subsequent to the time some of the signatures thereon were added to the petition, rendered the petition void and ineffective because of the change in the territory involved. It is fundamental that the contents of a petition are the determining factor in the decision of whether one will or will not sign it. If any later change of a substantial nature is made in a petition, we believe the consent of all prior signatories is necessary or the petition is rendered void. It is our opinion that the change in the petition in question was a substantial one.

Obviously the territory included within an annexation petition is one of the determining considerations in whether any given landowner will become a party to it. As one example of the influence the territory included in a petition might exert upon a potential signer: Suppose a factory site was included within the acreage listed as part of a petition for annexation. Would this not be an inducement for others to sign the petition with the thought in mind that the factory would pay large taxes and thereby reduce future taxes of the others included in the proposed annexation? If this factory property were later stricken from the annexation petition for any reason, could one reasonably suppose that the petition was still valid even though the signatories thereon did not know of that change in the petition and had not given their written permission for the change? We believe the same principle applies here. Relatively large areas of land included within the original petition were stricken therefrom after many of the signers had placed their names on the petition and after it had been filed with Long Lake. We believe that a new petition should have been circulated after

the changes were made or, at the very least, the written consent of all concerned should have been obtained. The record is barren of an indication that the latter course was followed in this case.

It is therefore our opinion that this petition was ineffective and void and consequently that Long Lake Ordinance No. 45 passed pursuant to the petition is also void. This determination means that the petition for incorporation and the subsequent election have priority and jurisdiction over the lands included within Ordinance No. 45.

We next consider the validity of Long Lake Ordinance No. 47 which purported to annex tracts C-1, C-2, and C-3, to Long Lake. The petition for the annexation of tract C-2 to Long Lake was not filed until October 21, 1954; the letter requesting the annexation of tract C-3 was not received by Long Lake until November 1, 1954. It is apparent that these requests for annexation were filed *after* the commencement date of the Orono proceedings, i. e. October 7, 1954, and that the latter proceedings have priority and jurisdiction over tracts C-2 and C-3.

However, it is our opinion that a part of the lands included within tract C-1 have been validly annexed to Long Lake. The petition filed with Long Lake on September 27, 1954 (Long Lake Exhibit 10) consisted of land entirely within tract C-1. This petition was signed by all of the owners of the land described within the petition before its date of filing. Inasmuch as the petition is valid in form and as the date of filing was prior to the commencement date of the Orono proceedings, this land has been validly annexed to Long Lake through its Ordinance No. 47 if the territory is so conditioned as to be properly subjected to village government as required by § 412.041, subd. 1.

We held in State ex rel. Danielson v. Village of Mound, 234 Minn. 531, 48 N. W. (2d) 855, that a territory is so conditioned if it lies in such close proximity to the village as to both abut thereon and to be suburban in character, and if it is limited in area and has a natural connection and community of interest with the village so as to be reasonably adaptable to the maintenace of the village gov-

ernment. The territory included within Long Lake Exhibit 10 fulfills these requirements and was therefore validly annexed to Long Lake.

Petitions for the annexation of the balance of the land included within tract C-1 were filed by Dorothy M. Holland and E. Morton Holland (Long Lake Exhibit 15), and by Hazel Johnston Smith (Long Lake Exhibit 14) on November 1, 1954. As the filing dates of the petitions for the annexation of these lands were subsequent to the filing of the Orono incorporation papers, the Orono proceedings have priority and jurisdiction over the Holland and Smith properties.

Ordinance No. 46 annexing the Union Cemetery to Long Lake was passed on October 18, 1954, pursuant to a formal petition filed by the cemetery corporation on that same date. The referee found that the incorporation proceedings covered the property included within the cemetery. As the date of the filing of the cemetery annexation petition was subsequent to the filing of the incorporation papers, Ordinance No. 46 must also be declared ineffective and void. It is therefore the opinion of the court that Long Lake has no lawful or valid jurisdiction over tracts B, C-2, C-3, the Union Cemetery tract, and the Smith and Holland lands included within tract C-1. The balance of tract C-1 has been validly annexed to Long Lake by Ordinance No. 47.

■ With reference to Issue II raised by Orono, it contends that the act which determines the priority date of the incorporation proceedings in the instant case is the date on which the census, required by statute in this type of proceedings, was completed. Long Lake takes the position that it is the first public procedural step that established priority and that it is the filing of the petition for incorporation together with the census list that establishes the priority date.

Both parties cite Town of Greenfield v. City of Milwaukee, 259 Wis. 77, 47 N. W. (2d) 292, in support of their position. In that case the cities of West Allis and Milwaukee began proceedings at about the same time to annex identical territory. The law under

which West Allis proceeded required the posting of a notice of intention to circulate an annexation petition in eight public places at least 30 days and not more than 45 days before circulating the petition. The statute under which Milwaukee proceeded did not require publication of such a notice but required simply the filing of the petition. The issue involved was one of priority. The court there stated that it was the first public procedural step in the annexation proceeding that established priority. The court held that the West Allis proceedings were the first to be commenced because they had commenced the posting of notice, under the statute, before Milwaukee had filed their petition.

M. S. A. 412.011, the applicable statute on incorporation procedure, has no similar requirement for posted notice. We agree with Long Lake that, under our statute, the first public procedural step is the filing of the petition for incorporation together with the census list and that this date established the time of the commencement of the incorporation proceedings. The mere taking or completing of the census did not, standing by itself, constitute the necessary public procedural step to establish priority. We are unable to accept the contention of Orono with respect to its Issue II.

█ In connection with the matter of costs and disbursements, Orono argues that the principal issue in this case is the relative rights of the two municipalities under the priority rule established in the Spring Lake Park case, and that it is a mere fact question and not a new public question. It urges that in the event of a favorable decision it be allowed its costs and disbursements. On the other hand Long Lake contends that a bona fide public question is involved and that no costs or disbursements should be allowed to either party. It appears to us that the question involved is of sufficient public interest and involves a bona fide public question so that no costs or disbursements should be allowed to either party.

Let a writ of ouster issue to the village of Long Lake and the members of its council and its officers as to the territory described herein as tracts B, C-2, C-3, the Union Cemetery tract, and the Smith and Holland lands included within tract C-1.