Chris NELSON, Appellant,

v.

PRODUCTIVE ALTERNATIVES, INC., Respondent.

No. A04–1691.

Supreme Court of Minnesota.

June 15, 2006.

Robert L. Russell, III, Fergus Falls, MN, for Petitioner.

H. Morrison Kershner, Pemberton, Sorlie, Rufer & Kershner, Fergus Falls, MN, for Respondent.

## OPINION

ANDERSON, RUSSELL A., Chief Justice.

We first consider whether the Minnesota Whistleblower Act, Minn.Stat. §§ 181.931–.935 (2004), precludes common-law wrongful-discharge claims premised on our holding in *Phipps v. Clark Oil & Refining Corp.*, 408 N.W.2d 569 (Minn.1987). We hold, as did the court of appeals, and as now agreed by the parties, that the Minnesota Whistleblower Act does not preclude common-law wrongful-discharge claims premised on *Phipps*. We next consider whether appellant's common-law wrongful-discharge claim in this case states a claim on which relief can be granted under Minn. R. Civ. P. 12.02. We hold that appellant's claim that he was wrongfully discharged from his employment with a nonprofit corporation in retaliation for voting as a member of the nonprofit corporation fails to state a claim on which relief can be granted under Minn. R. Civ. P. 12.02. We affirm.

Appellant Chris Nelson, who was both an employee and a member of respondent nonprofit corporation Productive Alternatives, Inc., filed a complaint in Otter Tail County District Court claiming that he was wrongfully discharged as an *employee* of Productive Alternatives in retaliation for voting as a *member* of Productive Alternatives. Nelson argued that this discharge was a wrongful discharge in violation of public policy under Minnesota common law. The district court concluded that Nelson had failed to state a claim under Minn. R. Civ. P. 12.02(e), determining that

Minnesota's Whistleblower Act precludes all common-law wrongful-discharge claims. On appeal, the court of appeals concluded that the Whistleblower Act does not preclude common-law wrongful-discharge claims, but affirmed the district court, concluding that the scope of such claims, as articulated in *Phipps v. Clark Oil & Refining Corp.*, 408 N.W.2d 569 (Minn.1987), is limited to situations in which an employee is fired for refusing to violate a law, regulation, or rule. *Nelson v. Productive Alternatives, Inc.*, 696 N.W.2d 841, 846 (Minn. App.2005).

■ On review of an order dismissing a claim under Rule 12.02, the sole issue is whether the pleadings are adequate. *Group Health Plan, Inc. v. Philip Morris Inc.*, 621 N.W.2d 2, 14 (Minn.2001). The reviewing court must accept all the plaintiff's allegations as true, but a dismissal must be affirmed if it is clear that no relief can be granted under any set of facts that can be proved consistent with the allegations. *Radke v. County of Freeborn*, 694 N.W.2d 788, 793 (Minn.2005).

■ Nelson's complaint alleges that he was "wrongfully discharged from employment by [Productive Alternatives] because of his actual and/or perceived actions as a member of the corporation." Though his complaint is worded broadly, Nelson has exclusively argued that he was discharged in retaliation for exercising his *voting rights* as a member, and that his discharge for this reason gives rise to a common-law cause of action for wrongful discharge in violation of public policy. Therefore, Nelson's claim hinges on whether Minnesota's common law recognizes this particular cause of action. This is a question of law that we review de novo. *See Radke*, 694 N.W.2d at 793 ("An appellate court reviews [a] claim's legal sufficiency de novo * * *.").

■ Generally, the employee-employer relationship in Minnesota is at-will, meaning that the relationship can be terminated for any reason or for no reason at all. *Anderson–Johanningmeier v. Mid–Minnesota Women's Ctr., Inc.*, 637 N.W.2d 270, 273 (Minn.2002). Though there are several statutory exceptions to the at-will rule,[1] we have only recognized a common-law cause of action for wrongful discharge in violation of public policy once, in *Phipps v. Clark Oil & Refining Corp.*, 408 N.W.2d 569. *Phipps* involved an employee, Mark Phipps, who brought suit because he had been discharged for refusing his employer's order to violate the Clean Air Act. *Phipps*, 408 N.W.2d at 570–71. The court of appeals recognized Phipps's wrongful-discharge claim and in doing so articulated a general exception to the at-will doctrine for all employees who are discharged "for reasons that contravene a clear mandate of public policy." *Phipps v. Clark Oil & Ref. Corp.*, 396 N.W.2d 588, 592 (Minn.App. 1986), *aff'd*, 408 N.W.2d 569 (Minn.1987). After the court of appeals' decision, but before this court decided the case on appeal, the Minnesota Legislature enacted the Minnesota Whistleblower Act, providing a statutory exception to the at-will doctrine similar to the common-law exception sought by Phipps. *See* Minn.Stat. § 181.932 (2004).[2] But because Phipps's

---

1. *E.g.,* Minn.Stat. § 176.82, subd. 1 (2004) (providing a cause of action for employees who are discharged in retaliation for filing workers' compensation claims); Minn.Stat. § 181.75 (2004) (providing a cause of action for employees who are discharged in retaliation for refusing to take a lie-detector test);

Minn.Stat. § 593.50 (2004) (forbidding discharges in retaliation for serving jury duty).

2. Minnesota Statutes § 181.932 provides:

An employer shall not discharge, discipline, threaten, otherwise discriminate against, or penalize an employee * * * because

case originated before the Whistleblower Act's effective date and was not actionable under the Act, we still faced the question on appeal of whether there existed—at least before the passage of the Act—a *common-law* wrongful-discharge remedy for refusing to violate the law. *See Phipps*, 408 N.W.2d at 571. We did not address the broader question of whether all discharges in violation of public policy gave rise to a common-law wrongful-discharge claim, but we held that

> an employee may bring an action for wrongful discharge if that employee is discharged for refusing to participate in an activity that the employee, in good faith, believes violates any state or federal law or rule or regulation adopted pursuant to law.

*Id.*

Some courts interpreting *Phipps*, including the district court in this case, have concluded that because Phipps's case arose before the adoption of the Whistleblower Act, the common-law cause of action that we recognized in *Phipps* was exclusively a *pre*-Whistleblower Act cause of action. *See, e.g., Piekarski v. Home Owners Sav. Bank F.S.B.*, 956 F.2d 1484, 1493 (8th Cir.1992). Similarly, some decisions have concluded that *post*-Whistleblower Act common-law causes of action for wrongful discharge are precluded by the Act, reasoning that "[o]nce the Minnesota legislature has drawn the line between employment disputes that genuinely implicate public policy and are actionable and those that are not, it is not for courts to redraw that line." *Piekarski*, 956 F.2d at 1493;

\* \* \* \*
(c) the employee refuses an employer's order to perform an action that the employee has an objective basis in fact to believe violates any state or federal law or rule or regulation adopted pursuant to law, and the employee informs the employer that the order is being refused for that reason \* \* \*.

*accord McClure v. Am. Family Mut. Ins. Co.*, 223 F.3d 845, 855–56 (8th Cir.2000).

■ Both Nelson and Productive Alternatives agree with the court of appeals' conclusion that the Minnesota Whistleblower Act does not preclude common-law wrongful-discharge claims. *Nelson*, 696 N.W.2d at 846. We also agree with the court of appeals. Because a statute should not be interpreted to modify the common law unless the statute does so explicitly, the Whistleblower Act, which does not expressly modify the common law, should not be read to preclude common-law wrongful-discharge actions. *See Rosenberg v. Heritage Renovations, LLC*, 685 N.W.2d 320, 327–28 (Minn.2004) (holding that statutes in derogation of the common law are strictly construed, and that legislation will not be interpreted to supplant, impair, or restrict equity's normal function as an aid to complete justice). Further, the plain language of both *Phipps's* holding and our subsequent holding in *Abraham v. County of Hennepin*, 639 N.W.2d 342 (Minn.2002), indicate that the *Phipps* cause of action is not merely a pre-Whistleblower Act cause of action, but a cause of action with continuing viability in the common law.[3] *See Phipps*, 408 N.W.2d at 571 (stating, after the passage of the Whistleblower Act, "we hold that an employee *may bring* an action for wrongful discharge," and agreeing that the "common law \* \* \* *protects* those fired for their refusal to violate the law" (emphasis added)); *Abraham*, 639 N.W.2d at 352 (stating that in *Phipps* "[w]e allowed the employee to pursue his common

**3.** We recognize that the common-law cause of action recognized in *Phipps*, though still viable, may well be largely duplicative of the cause of action available under the Whistleblower Act. *Compare Phipps*, 408 N.W.2d at 571, *with* Minn.Stat. § 181.932.

law cause of action for wrongful discharge, *and* we agreed that *the common law protects* those fired for their refusal to violate the law" (emphasis added)).

Though the Whistleblower Act does not preclude common-law wrongful-discharge actions premised on *Phipps*, Nelson's claim—that being discharged as an employee for exercising his voting rights as a member of Productive Alternatives gives rise to a common-law cause of action for wrongful discharge in violation of public policy—nonetheless fails under Minn. R. Civ. P. 12.02. Even those courts that have undertaken the difficult task of judicially delineating a general public-policy exception to the at-will doctrine have required that the public policy at issue be clear in order to justify a common-law cause of action. *See, e.g., Gantt v. Sentry Ins.*, 1 Cal.4th 1083, 4 Cal.Rptr.2d 874, 824 P.2d 680, 684 (1992) ("[T]he [public] policy must be fundamental, substantial and well established at the time of the discharge." (quotations omitted)), *abrogated on other grounds by Green v. Ralee Eng'g Co.*, 19 Cal.4th 66, 78 Cal.Rptr.2d 16, 960 P.2d 1046 (1998); *Berube v. Fashion Centre, Ltd.*, 771 P.2d 1033, 1043 (Utah 1989) (holding that the court would recognize only those public policies that "are so substantial and fundamental that there can be virtually no question as to their importance for promotion of the public good"). But Nelson points to no clear public policy that supports a cause of action for employees who are discharged in retaliation for exercising their voting rights as nonprofit members.

Nelson argues that such a public policy can be found in chapter 317A (2004) of Minnesota Statutes, the chapter dealing with nonprofit corporations. Nelson does not point to any Minnesota statute that expressly prohibits a nonprofit corporation from discharging an employee in retaliation for voting as a member.[4] Nonetheless, Nelson argues that because chapter 317A allows members to vote in certain circumstances and protects their voting rights in certain ways, we should conclude that chapter 317A embodies a general public policy of strong protection for member voting rights, and that we should therefore recognize protections for members even in situations that are not explicitly provided for in chapter 317A, such as when an employee is discharged in retaliation for voting as a member.

In the absence of express statutory provisions saying otherwise, we do not believe that Minnesota's nonprofit-corporation statutes so broadly protect a member's voting rights. In fact, as a general matter, chapter 317A allows nonprofit corporations considerable flexibility to control and limit members' rights. For example, while members have voting rights by default, these rights can be modified or eliminated in the nonprofit's bylaws or articles, or the nonprofit can opt to have no members at all. *See* Minn.Stat. §§ 317A.401, 317A.441 (2004). And though nonprofit corporations may not expel members without a fair and reasonable procedure, nonprofit corporations have broad authority to create the criteria and terms of membership. *See* Minn.Stat. §§ 317A.401, 317A.411 (2004). In short, though members are given express protections from certain corporate actions, members' rights are subject to considerable limitations as well.

We must assume that the legislature, by creating the mixture of protections and limitations in the extensive provisions of

---

4.  Membership in a nonprofit corporation may entail a variety of rights and duties. *See* Minn.Stat. § 317A.401 (2004). For example, nonprofit members may have voting rights on various matters of corporate governance. *See id.*

chapter 317A, has struck a balance, not only imposing appropriate restrictions on nonprofit corporations, but also reserving appropriate discretion for nonprofit corporations to conduct their business within these restrictions. We express no opinion about whether the legislature has struck the best possible balance, and we recognize that reasonable minds may disagree about whether it has. But since it is undisputed that the actions Nelson attributes to Productive Alternatives are not among the various practices prohibited by chapter 317A, we must conclude that the legislature has implicitly reserved these actions to the discretion of Productive Alternatives. In so doing, we abide by the canon of statutory construction "expressio unius exclusio alterius," meaning the expression of one thing is the exclusion of another. *See In re Common Sch. Dist. No. 1317,* 263 Minn. 573, 575, 117 N.W.2d 390, 391 (1962) (invoking "[e]xpressio unius est exclusio alterius"); *Anderson v. Twin City Rapid Transit Co.,* 250 Minn. 167, 175, 84 N.W.2d 593, 599 (1957) (same). That is, since the legislature has extensively expressed the rights and privileges of membership in a nonprofit corporation, and since protection from reprisal employment discharge is not among these express protections, we must conclude that the legislature meant not to protect members from such practices. *See* Minn.Stat. 645.16 (2004) ("The object of all interpretation and construction of laws is to ascertain and effectuate the intention of the legislature. * * * When the words of a law in their application to an existing situation are clear and free from all ambiguity, the letter of the law shall not be disregarded under the pretext of pursuing the spirit."). Accordingly, we cannot conclude that there is a clear public policy at stake that would justify judicially interposing a new restriction and a new cause of action amidst the carefully considered legal framework that undergirds Minnesota's nonprofit corporations. Such a modification must be made by the legislature, if at all. *See Haskin v. Northeast Airways, Inc.,* 266 Minn. 210, 216, 123 N.W.2d 81, 86 (1963).

For these reasons, we hold that Nelson's claim that he was discharged from his employment with Productive Alternatives in retaliation for voting as a member of Productive Alternatives fails to state a claim on which relief can be granted.[5]

Affirmed.

---

5. Because we conclude that Nelson's discharge was not a violation of a clear public policy, we need not determine whether Nelson would have stated a viable cause of action for wrongful discharge if his discharge *had* violated a clear public policy. Accordingly, we also do not address the broader question of whether other discharges in violation of public policy give rise to common-law causes of action, aside from those that we already recognized in *Phipps*. We do note, however, that this court has generally been reluctant to undertake the task of determining public policy since this role is usually better performed by the legislature. *See, e.g., Anderson–Johanningmeier,* 637 N.W.2d at 277–78 (Blatz, C.J., concurring) (agreeing with the majority's conclusion that the Whistleblower Act does not include an implied requirement that discharges violate public policy, and emphasizing that courts, as compared to the legislature, are ill-equipped to determine what constitutes "public policy"); *Haskin,* 266 Minn. at 216, 123 N.W.2d at 86 (refusing to recognize a cause of action for an airplane passenger injured by a negligent pilot and holding that "strong considerations of public policy which would justify a change in the law * * * are for the legislature and not this court to evaluate"). *But see, e.g., Yang v. Voyagaire Houseboats,* 701 N.W.2d 783, 789 (Minn.2005) (noting that courts will review certain contract provi-

sions to determine whether they violate public    policy).