**Jane Kay DUKOWITZ, Appellant,**

v.

**HANNON SECURITY SERVICES, Respondent.**

**No. A11–1481.**

Court of Appeals of Minnesota.

July 9, 2012.

John J. Neal, Mark G. McKeon, Willenbring, Dahl, Wocken & Zimmermann, PLLC, St. Cloud, MN, for appellant.

James R. Andreen, Erstad & Reimer, P.A., Minneapolis, MN, for respondent.

Considered and decided by CONNOLLY, Presiding Judge; LARKIN, Judge; and COLLINS, Judge.

## OPINION

COLLINS, Judge.*

Appellant challenges the district court's dismissal of her claim for the wrongful

---

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by

termination of her employment, arguing that the district court erred by determining that (1) her allegation of termination in retaliation for applying for unemployment benefits does not state a claim for wrongful termination in violation of public policy; and (2) the unemployment compensation statutes do not create an implied private right of action. Appellant also challenges the court's award of costs and disbursements. We affirm.

## FACTS

Appellant Jane Kay Dukowitz was employed by respondent Hannon Security Services, Inc. as a security officer from November 2005 until Hannon terminated her employment on March 13, 2009. During that time, Dukowitz worked various shifts at two different facilities for which Hannon provided contract security services.

In July 2008, Dukowitz was offered and accepted a seasonal position in order to obtain daytime hours. Dukowitz signed a document reflecting her decision to accept the position, stating that she would "take the chance of it staying open." Based on that, Hannon asserts that Dukowitz accepted the seasonal position with the understanding that the position could become permanent, but that if not, she would be out of a job. Dukowitz disputes this characterization, arguing that she was taking the chance of being transferred back to a night shift, not the chance of being discharged.

In early to mid-December 2008, Dukowitz learned that her position would be ending and that Hannon had no hours available for her after December 23, 2008. Dukowitz claims that she told her supervisors that she would have to apply for unemployment benefits, and that her direct supervisor "turned to [the other supervisor] and stated 'should we term her,' meaning should we terminate her." Dukowitz asked that she be allowed to work shifts when they became available, and her direct supervisor agreed. Dukowitz was called back to work one additional shift on New Year's Eve 2008.

Dukowitz applied for unemployment benefits at the end of December 2008. Hannon initially appealed Dukowitz's eligibility for benefits, but did not appear to contest benefits at the hearing. An administrative law judge dismissed the appeal.

On March 13, 2009, Hannon terminated Dukowitz's employment. The parties disagree about the reasons. Hannon asserts that Dukowitz was terminated because "there appeared to be no prospect that she would be able work for Hannon in the near future ... because of her poor work at Fingerhut, her expressed unwillingness to work weekends or nights and the lack of Hannon opportunities for business in the St. Cloud area." According to Hannon, Fingerhut exercised a contractual right to request that Dukowitz not be assigned to work at its facility. Dukowitz disputes the assertions about her performance and her unwillingness to work certain shifts and states that she was never told she could no longer work at Fingerhut.

Dukowitz brought this action in June 2010, claiming that Hannon unlawfully terminated her employment in retaliation for her application for unemployment benefits. Hannon moved for summary judgment, arguing that the complaint did not state a cognizable claim for wrongful termination in violation of public policy. In briefing her opposition to the summary-judgment motion, Dukowitz raised the additional theory that the Minnesota Unemployment In-

appointment pursuant to Minn. Const. art. VI, § 10.

surance Law creates an implied private right of action for retaliatory discharge. The district court granted summary judgment in favor of Hannon, rejecting both of Dukowitz's asserted theories of liability. The district court subsequently awarded Hannon $1,361.35 in costs and disbursements, rejecting Dukowitz's assertion that Hannon's application should be denied due to Dukowitz's in forma pauperis status and the financial hardship that such an award would impose. This appeal followed.

## ISSUES

I. Does the Minnesota common law recognize a claim of retaliatory discharge based on an employee's stated intention to apply?

II. Does the Minnesota Unemployment Insurance Law create an implied private right of action for retaliatory discharge?

III. Did the district court err by awarding costs and disbursements to the prevailing party when the nonprevailing party proceeded to trial in forma pauperis?

## ANALYSIS

The Minnesota Unemployment Insurance Law (the unemployment law) creates a program providing temporary partial wage replacement for those unemployed through no fault of their own. Minn.Stat. § 268.03. An individual is considered unemployed, and thus potentially eligible for benefits under the unemployment statutes, if "(1) in any week that the applicant performs less than 32 hours of service in ... covered employment ... and (2) any earnings with respect to that week are less than the applicant's weekly unemployment benefit amount." Minn.Stat. § 268.035, subd. 26. Thus, it is possible under certain circumstances for an employer to retaliate against an employee for seeking unemployment benefits by terminating that individual's employment. The unemployment law does not expressly prohibit such conduct. At issue here is whether such conduct nevertheless can form the basis for a civil cause of action, either under the common law or because the unemployment law implies a private right of action.

## I.

■ Dukowitz first argues that she has stated a viable claim for discharge in contravention of public policy. In *Phipps v. Clark Oil & Refining Corp.*, the Minnesota Supreme Court recognized, as a narrow exception to the general at-will employment rule, that an employer may be liable for wrongful discharge if it terminates an employment relationship because of the employee's refusal to violate the law. 408 N.W.2d 569, 571 (Minn.1987). Dukowitz's claim does not come within this narrow exception. Thus, allowing her to proceed on her claim on this theory would require us to recognize a new cause of action, which we have generally declined to do. *See Stubbs v. N. Mem. Med. Center*, 448 N.W.2d 78, 81 (Minn.App.1989) (explaining, in declining to recognize cause of action for invasion of privacy, that "it is not the function of this court to establish new causes of action"), *review denied* (Minn. Jan. 12, 1990); *Tereault v. Palmer*, 413 N.W.2d 283, 286 (Minn.App.1987) (declining to expand breach-of-warranty claim, explaining that "we believe the task of extending existing law falls to the supreme court or the legislature, but it does not fall to this court"), *review denied* (Minn. Oct. 13, 1987).

Dukowitz asserts that we need not extend the law in order to recognize her claim, arguing that the supreme court has suggested in its more recent decision in *Nelson v. Productive Alts., Inc.* that such a

claim is viable. 715 N.W.2d 452 (Minn. 2006). This court, Dukowitz argues, need only clarify the import of existing caselaw. We disagree.

Contrary to Dukowitz's assertion, the supreme court in *Nelson* made clear that it has not yet determined whether to recognize a cause of action for wrongful discharge in violation of public policy beyond the situation in which an employee is fired for refusing to violate the law. *Id.* at 454. In that case, an employee claimed that he was terminated in retaliation for his votes as a member of the nonprofit organization that also employed him. *Id.* at 453. The court acknowledged that other jurisdictions have recognized a cause of action for wrongful discharge in violation of public policy, and observed that "even those courts that have undertaken the difficult task of judicially delineating a general public-policy exception to the at-will doctrine have required that the public policy at issue be clear in order to justify a common-law cause of action." *Id.* at 456. Reasoning that Nelson had identified no clear public policy relating to his right to vote as a member of a nonprofit, the court affirmed dismissal of his claim. *Id.* at 456–57. In so doing, the court made clear that it had not and was not reaching the issue of whether a broader wrongful-discharge claim was cognizable under Minnesota law. *Id.* at 457 n. 5.

Beyond declining to reach the issue, moreover, the supreme court in *Nelson* signaled its reluctance to recognize a broader wrongful discharge claim than that recognized in *Phipps.* The court noted that it "has generally been reluctant to undertake the task of determining public policy since this role is usually better performed by the legislature." 715 N.W.2d at 457 n. 5. Accordingly, we reject Dukowitz's assertion that *Nelson* can be read to support recognition of her claim.

Dukowitz also relies on caselaw from other jurisdictions, but these decisions are unavailing because they have either been issued by a supreme court, *see Lara v. Thomas,* 512 N.W.2d 777, 782 (Iowa 1994), or cite supreme court decisions that had previously recognized a broad cause of action for discharge in violation of public policy, *see M.C. Welding & Mach. Co., Inc. v. Kotwa,* 845 N.E.2d 188, 192 (Ind.Ct.App. 2006) (citing Indiana Supreme Court authority for proposition that allegation of discharge for "exercising a statutorily conferred right" supports a claim for wrongful discharge); *Highhouse v. Avery Transp.,* 443 Pa.Super. 120, 660 A.2d 1374, 1377 (1995) (citing Pennsylvania Supreme Court's recognition of exceptions to at-will employment rule when "discharges of at-will employees would threaten clear mandates of public policy"); *Smith v. Troy Moose Lodge No. 1044,* 96 Ohio App.3d 814, 645 N.E.2d 1352, 1353 (1994) (citing Ohio Supreme Court decision deeming discharge wrongful if it "contravened a clear public policy") (quotation omitted). Because the recognition of a new common-law claim falls within the province of the Minnesota Supreme Court, and because the only pronouncements from that court suggest that it would not adopt such a cause of action, the district court did not err by dismissing Dukowitz's claim brought under this theory.

## II.

▮▮▮▮ Dukowitz alternatively argues that she has stated a cognizable claim because the unemployment law creates an implied private right of action for retaliatory discharge. "A statute does not give rise to a civil cause of action unless the language of the statute is explicit or it can be determined by clear implication." *Becker v. Mayo Found.,* 737 N.W.2d 200, 207 (Minn.2007). In determining whether

a cause of action can be implied, this court considers "(1) whether the plaintiff belongs to the class for whose benefit the statute was enacted; (2) whether the legislature indicated an intent to create or deny a remedy; and (3) whether implying a remedy would be consistent with the underlying purposes of the legislative enactment." *Flour Exch. Bldg. Corp. v. State,* 524 N.W.2d 496, 499 (Minn.App.1994), *review denied* (Minn. Feb. 14, 1995).

■ Dukowitz relies on two statutory provisions of the unemployment compensation law to support her claim that it implies a private right of action. First, she relies on the purpose of the law articulated in Minn.Stat. § 268.03:

> The public purpose of this chapter is: Economic insecurity because of involuntary unemployment of workers in Minnesota is a subject of general concern that requires appropriate action by the legislature. The public good is promoted by providing workers who are unemployed through no fault of their own a temporary partial wage replacement to assist the unemployed worker to become reemployed. This program is the "Minnesota unemployment insurance program."

Second, she relies on Minn.Stat. § 268.192, subdivision 1, which voids agreements to forego benefits and prohibits employers from obstructing or impeding employee efforts to obtain unemployment benefits:

> Any agreement by an individual to waive, release, or commute rights to unemployment benefits or any other rights under the Minnesota Unemployment Insurance Law is void. Any agreement by an employee to pay all or any portion of an employer's taxes, is void. No employer may directly or indirectly make or require or accept any deduction from wages to pay the employer's taxes, require or accept any waiver of any right

or in any manner obstruct or impede an application or continued request for unemployment benefits. Any employer or officer or agent of any employer who violates any portion of this subdivision is, for each offense, guilty of a misdemeanor.

Having reviewed these statutory provisions in conjunction with the relevant factors for implying a cause of action, we conclude that a private right of action cannot be implied from the unemployment law. We agree that Dukowitz—as an unemployed person within the meaning of the unemployment law—was among the class of persons intended to be protected by the unemployment law. *See, e.g., Sparrow v. Indep. Sch. Dist. 272,* 534 N.W.2d 551, 553 (Minn.App.1995) (identifying as purpose of the statutes "to provide benefits to those persons who are 'unemployed through no fault of their own'") (citing Minn.Stat. § 268.03). But consideration of the remaining two factors leads us to conclude that the legislature did not intend to create a private right of action.

With respect to the second factor, the legislature's intention to imply a cause of action, we initially note that the conduct proscribed by the unemployment statutes does not include retaliation against an employee who applies for benefits. *See* Minn. Stat. § 268.192, subd. 1 (prohibiting obstruction or interference with application for benefits). Moreover, the statute creates an express, criminal remedy for conduct that actually is proscribed. *See id.* (providing that violation constitutes misdemeanor). This remedial provision—albeit not the one that Dukowitz prefers—belies the assertion that the legislature intended to provide for a private right of action. *See Becker,* 737 N.W.2d at 207 ("It is an elemental canon of statutory construction that where a statute expressly provides a particular remedy or remedies, a court

must be chary of reading others into it.") (quotation omitted); *Mutual Serv. Cas. Ins. Co. v. Midway Massage, Inc.*, 695 N.W.2d 138, 142–43 (Minn.App.2005) (relying on legislature's creation of alternate remedy in declining to imply private right of action), *review denied* (Minn. June 14, 2005).

With respect to the third factor, although it would not necessarily be inconsistent with the unemployment statutes, it is not clear how providing a private right of action for retaliation would "advance the legislative purposes" of the unemployment law. *Midway Massage*, 695 N.W.2d at 143. In rejecting an argument that a private right of action could be implied for violation of a provision of the worker's compensation act requiring inspection of employer premises before assignment of a risk plan, this court explained that "[t]he purpose of the statute is not to establish safety standards or to protect employees from harm, but rather to provide them with compensation insurance, should an accident occur." *Buck v. Freeman*, 619 N.W.2d 793, 797 (Minn.App.2000), *review denied* (Minn. Feb. 21, 2001). By analogy, the purpose of the unemployment compensation statutes is not to prevent employees from becoming unemployed, but rather to provide them with interim benefits when they do.

Having pondered the relevant considerations, we conclude that the unemployment law does not imply a private right of action for retaliatory discharge. Thus, the district court did not err by dismissing Dukowitz's claim brought under this theory.

### III.

■ Dukowitz challenges the district court's award of $1,361.35 in costs and disbursements to Hannon, arguing that the district court erred by failing to consider her in forma pauperis status and the finan-cial hardship this order would cause. The Minnesota Statutes provide that, "[i]n every action in a district court, the prevailing party . . . *shall* be allowed reasonable disbursements paid or incurred." Minn.Stat. § 549.04, subd. 1 (2010). And Minnesota Rule of Civil Procedure 54.04(a) provides that "[c]osts and disbursements shall be allowed as provided by law." By their plain language, neither the statute nor the rule afford the district court discretion to deny such award due to the nonprevailing party's in forma pauperis status or financial hardship. And the statute governing in forma pauperis status provides that "[j]udgment may be rendered for costs at the conclusion of the action as in other cases." Minn.Stat. § 563.01, subd. 10 (2010).

Dukowitz points to language in Minn. R. Civ. P. 54.04(d), which provides that "[t]he judge or court administrator *may* tax any costs and disbursements allowed by law" (emphasis added), arguing that this use of permissive language contradicts Minn.Stat. § 549.04, subd. 1, and that the rule should control. We disagree. We read this provision of the rule merely to confer authority to either the district court or the court administrator to perform the function of taxing costs and disbursements in appropriate cases—"[t]he judge *or* court administrator may tax any costs and disbursements allowed by law." Minn. R. Civ. P. 54.04(d) (different emphasis added).

We likewise reject Dukowitz's reliance upon the following language in the in forma pauperis statute:

Judgment may be rendered for costs at the conclusion of the action as in other cases. In the event any person recovers moneys by either settlement or judgment as a result of commencing or defending an action in forma pauperis, the costs deferred and the expenses directed by the court to be paid under this sec-

tion shall be included in such moneys and shall be paid directly to the court administrator by the opposing party. The court administrator shall transmit the costs to the commissioner of management and budget for deposit in the state treasury and credit them to the general fund.

Minn.Stat. § 563.01, subd. 10. Dukowitz argues that the district court erred by relying on the first sentence of this subdivision while disregarding the last two sentences. But as argued by Hannon, the last two sentences do not have application unless the in forma pauperis party is the prevailing party, in which event the statute requires that such moneys be paid into court.

Nor can Dukowitz find support in *State ex rel. Vill. of Orono v. Vill. of Long Lake*, 247 Minn. 264, 77 N.W.2d 46 (1956), which arose out of an action in the nature of quo warranto over which the supreme court exercised original jurisdiction. *Id.* at 264, 77 N.W.2d at 47. Neither Minn.Stat. § 549.04 nor Minn. R. Civ. P. 54.04 would apply to that action. *See* Minn.Stat. 549.04 (providing for award of costs in "every action in a district court"); Minn. R. Civ. P. 1 (providing that rules of civil procedure govern civil actions in district courts); Minn. R. Civ.App. P. 139 (governing costs and disbursements in appellate court proceedings and allowing appellate court to deny costs and disbursements for good cause).

Finally, we reject Dukowitz's reliance on caselaw from other jurisdictions, including federal courts, interpreting and applying language different from Minnesota's statute and rule. These authorities have no persuasive weight because of the differences in the language employed. *See, e.g.,* Fed.R.Civ.P. 54(d)(1) ("Unless a federal statute, these rules, or a court order provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing party."); Haw. R. Civ. P. 54(d)(1) ("[e]xcept when express provision therefor is made either in a statute or in these rules, costs shall be allowed as of course to the prevailing party unless the court otherwise directs").

In sum, we conclude that the district court correctly determined that it did not have discretion to deny Hannon's application for costs and disbursements based on Dukowitz's in forma pauperis status or in consideration of the financial hardship that might be caused. Thus, the district court did not err by awarding costs and disbursements in favor of Hannon as the prevailing party.

## DECISION

Because Dukowitz did not state a viable claim for wrongful discharge, and because the district court properly awarded costs and disbursements to Hannon, we affirm.

**Affirmed.**