GILDEA, Chief Justice (dissenting).
DISSENT
This case presents two issues, one involving statutory interpretation and the other the common law. We are asked to interpret Minn. Stat. § 504B.441 (2018), and decide whether a residential tenant must file a civil complaint commencing a judicial proceeding in order for the retaliation defense set out in section 504B.441 to apply. The majority holds that a complaint commencing a judicial proceeding is not a requirement. Because, in my view, the majority's interpretation is inconsistent with the plain language of the statute, I disagree. The majority also creates a new common law retaliation defense to eviction. Because the majority's creation of a retaliatory-eviction defense is inconsistent with our precedent, I disagree with the majority on this conclusion as well. Accordingly, I dissent.
I.
The first question is whether Olson is entitled to rely on the retaliation defense set out in Minn. Stat. § 504B.441. Central Housing Associates, LP (CHA) served Olson with written notice of lease termination *411 on January 20, 2017. The only conduct of Olson's prior to the January 20 date that any party has attempted to argue constitutes a "complaint of a violation" was Olson's statements to CHA regarding maintenance and the alleged harassment of his daughter by a maintenance worker. The question we must decide in order to determine whether the section 504B.441 defense is available to Olson is whether Olson's pre-January 20, 2017 statements constitute a "complaint of a violation."
The plain language of the statute indicates that these statements do not qualify. Section 504B.441, captioned "Residential Tenant May Not Be Penalized for Complaint," states:
A residential tenant may not be evicted, nor may the residential tenant's obligations under a lease be increased or the services decreased, if the eviction or increase of obligations or decrease of services is intended as a penalty for the residential tenant's or housing-related neighborhood organization's complaint of a violation. The burden of proving otherwise is on the landlord if the eviction or increase of obligations or decrease of services occurs within 90 days after filing the complaint , unless the court finds that the complaint was not made in good faith. After 90 days the burden of proof is on the residential tenant.
Minn. Stat. § 504B.441 (emphases added). Section 504B.441, by its plain terms, indicates that a complaint is something that is filed. As the majority properly recognizes, the verb "file" can have several meanings, but the only meanings that could arguably be applicable to the phrase "filing a complaint" are "to place among official records as prescribed by law," "to return to the office of the clerk of a court without action on the merits," or "to initiate (as a legal action) through proper formal procedure." See Merriam-Webster's Collegiate Dictionary 434 (10th ed. 2001). Olson did none of these things. As the majority recognizes, "filing a complaint" connotes taking an action that is formal and official. A mere statement of dissatisfaction to one's landlord does not qualify.
Based on the facts of this case, it is not necessary for us to determine whether a "complaint" under section 504B.441 includes only a civil complaint commencing a tenant remedies action, or whether it also includes a complaint to a non-judicial government entity. But, contrary to the majority's conclusion, the remainder of the Tenant Remedies law clearly demonstrates that the Legislature intended the former. As the majority recognizes, where the word "complaint" is used in other sections of the Tenant Remedies law, it clearly refers to the formal commencement of a lawsuit. See Minn. Stat. § 504B.395, subd. 5 (2018) ("The action must be started by service of a complaint and summons."); id. , subd. 6 (2018) (stating that "[t]he complaint must be verified" and must allege material facts showing a violation, among other things); Minn. Stat. § 504B.401, subd. 1 (2018) ("On receipt of the complaint in section 504B.395, the court administrator shall prepare a summons" which shall "specify the time and place of the hearing to be held on the complaint," and which must be served "not less than seven nor more than 14 days after receipt of the complaint by the court administrator."); id. , subd. 2 (2018) (requiring that the summons and complaint be served "not less than seven nor more than 14 days before the hearing" and describing permitted methods of serving the "summons and complaint"); Minn. Stat. § 504B.415(1) (2018) (stating that one legal defense to a "complaint" is that "the violation or violations alleged in the complaint do not exist" or "have been removed or remedied"); Minn. Stat. § 504B.425(a) (2018) (authorizing a court to take certain actions if it *412 "finds that the complaint ... has been proved"). We interpret a statute "in light of the surrounding sections to avoid conflicting interpretations." Am. Family Ins. Grp. v. Schroedl , 616 N.W.2d 273, 277 (Minn. 2000). Based on this context, I interpret "complaint" to mean the same thing in section 504B.441 as it does literally everywhere else in the rest of the Tenant Remedies statutes: a civil complaint in a tenant-remedies action under Minn. Stat. § 504B.395.[1]
The majority's interpretation of "complaint" as including reports to a government agency also fails because the Legislature has demonstrated that it knows how to refer to such reports when it intends to include them. A separate retaliation defense set out in Minn. Stat. § 504B.285 (2018), not directly relevant to the issues before us, provides that "[i]t is a defense to an action for recovery of premises following the alleged termination of a tenancy by notice to quit for the defendant to prove by a fair preponderance of the evidence that ... the alleged termination was intended in whole or part as a penalty for the defendant's good faith report to a governmental authority of the plaintiff's violation of a health, safety, housing, or building code or ordinance. " Minn. Stat. § 504B.285, subd. 2(2) (emphasis added). The emphasized text would clearly encompass the kinds of "complaints" to government agencies that the majority finds are encompassed within the phrase "complaint of a violation." But if the Legislature had intended the retaliation defense in Minn. Stat. § 504B.441 to apply to complaints to government entities, it could have used the same formulation that it used in section 504B.285. Instead, it referred to a "complaint of a violation." We generally assume that when the Legislature uses different words, it intends to refer to different things. Nelson v. Schlener , 859 N.W.2d 288, 294 (Minn. 2015). I see no reason for this case to be an exception.[2]
In sum, I disagree with the majority's statutory interpretation. I would interpret *413 section 504B.441 as the court of appeals did, and affirm on that basis.
II.
I also disagree with the majority that we should recognize a common-law retaliatory-eviction defense. As the majority acknowledges, we are "generally ... reluctant to undertake the task of determining public policy," a prerequisite to recognizing a new common-law right, remedy, or defense, because "this role is usually better performed by the legislature." Dukowitz v. Hannon Sec. Servs. , 841 N.W.2d 147, 151 (Minn. 2014) (citation omitted) (internal quotation marks omitted); see also Nelson v. Productive Alts., Inc. , 715 N.W.2d 452, 457 n. 5 (Minn. 2006) (noting that our court "has generally been reluctant to undertake the task of determining public policy [because that] role is usually better performed by the legislature"); Stawikowski v. Collins Elec. Constr. Co. , 289 N.W.2d 390, 395 (Minn. 1979) ("Although we believe that the equities favor nondisqualification of [applicants for unemployment insurance] in cases such as this, we do well to exercise judicial restraint in deference to the legislature's superior ability to deal with broad social and economic policy issues of this nature."); State ex rel. Meehan v. Empie , 164 Minn. 14, 204 N.W. 572, 573-74 (1925) ("Courts do not determine public policy when the Legislature speaks."). Furthermore, "adoption of a new cause of action is particularly inappropriate when the Legislature has already provided other remedies to vindicate the public policy of the state." Dukowitz , 841 N.W.2d at 153.
That situation is squarely presented in this case. Indeed, the Legislature has provided for not one, but two, separate retaliation defenses, in two separate provisions: Minn. Stat. §§ 504B.285 and 504B.441. That is to say, the Legislature has already delineated the precise circumstances in which a retaliation defense should be available. Consistent with our precedent, the judiciary should not presume to ignore the Legislature's policy preferences in favor of our own. But, departing from almost 100 years of precedent, that is exactly what the majority has done when it asserts that "it would have made sense" for the Legislature to provide the broader defense the majority creates.
To be sure, the Legislature also expressed an intent in Minn. Stat. § 504B.471 (2018) not to displace other remedies, including any that might exist at common law. But at the time the Legislature passed section 504B.471, there was no retaliatory-eviction defense at common law. I do not take the Legislature's expressed intention not to interfere with existing remedies as an invitation to create new ones that disturb the policy the Legislature chose. Instead, under these circumstances, I would hew to our precedent and not recognize a retaliation defense at common law where the Legislature has chosen not to create one by statute.
For these reasons, I respectfully dissent.

The majority rejects this interpretation, at least in part, contending that this interpretation of section 504B.441 would conflict with the statute governing rent-escrow actions, Minn. Stat. § 504B.385 (2018). That statute provides that "Section 504B.441 applies to proceedings under this section." Id. , subd. 11. Therefore, the majority reasons, section 504B.441 cannot apply only to a complaint under section 504B.395 commencing a tenant-remedies action. See supra p. 404 n.3. I disagree with the majority that the text of section 504B.385, subdivision 11 limits the plain meaning of the words used in section 504B.441. In section 504B.385, the Legislature declares that the retaliation protections of section 504B.441 "appl[y] to proceedings under" section 504B.385. That proceedings under section 504B.385 include things different than proceedings under section 504B.441 says nothing about what section 504B.441 means; it says only that one cannot be retaliated against for invoking the proceedings set forth in section 504B.385. So, for example, the equivalent in section 504B.385 to a "complaint" in section 504B.441 is the act that commences the rent-escrow action-namely, the deposition of the contested amount of rent with the court administrator, as set forth in section 504B.385, subdivision 1. And section 504B.385, subdivision 11 makes clear that one cannot be retaliated against for commencing that action.

The majority suggests that comparing the words used in Min. Stat. § 504B.441 with those in Minn. Stat. § 504B.285 is only permissible if section 504B.441 is ambiguous. I agree that the canon of in pari materia is available only if the statute is ambiguous. As detailed above, in my view, the word "complaint" unambiguously mean a civil complaint in a tenant-remedies action. That the Legislature, in a related statute, used a different word to refer to a different thing only buttresses that conclusion; it is not the basis for the conclusion. But if, as the majority concludes, section 504B.441 were ambiguous, a comparison with section 504B.285 would dispel any ambiguity.