**Todd BURT, Respondent,**

v.

**RACKNER, INC. d/b/a/ Bunny's Bar & Grill, Appellant.**

A15-2045

Supreme Court of Minnesota.

Filed: October 11, 2017

Andrew L. Marshall, Mark R. Bradford, Christine E. Hinrichs, Bassford Remele, P.A., Minneapolis, Minnesota, for respondent.

Sarah E. Bushnell, Jeffrey M. Markowitz, Colin S. Seaborg, Arthur, Chapman, Kettering, Smetak & Pikala, P.A., Minneapolis, Minnesota, for appellant.

Matthew A. Frank, Nichols Kaster, PLLP, Minneapolis, Minnesota; Frances E. Baillon, Baillon Thome Joswiak & Wanta LLP, Minneapolis, Minnesota; and Brian Rochel, Doug Micko, Teske Micko Katz Kitzer & Rochel, PLLP, Minneapolis, Minnesota for amicus curiae National Employment Lawyers Association, Minnesota Chapter.

Bruce J. Douglas, Ogletree, Deakins, Nash, Smoak & Stewart, P.C., Minneapolis, Minnesota; Joseph G. Schmitt, Peter D. Gray, Veena A. Iyer, Nilan Johnson Lewis, P.A., Minneapolis, Minnesota; and Alec J. Beck, Ford & Harrison LLP, Minneapolis, Minnesota, for amicus curiae Minnesota Management Attorney's Association.

John C. Hauge, Meggen E. Lindsay, Brandon J. Wheeler, Felhaber Larson, Minneapolis, Minnesota for amicus curiae Minnesota Restaurant Association.

## OPINION

HUDSON, Justice.

Appellant Rackner, Inc. d/b/a Bunny's Bar & Grill challenges a court of appeals' opinion reversing the dismissal of respondent Todd Burt's complaint alleging a violation of the Minnesota Fair Labor Standards Act (MFLSA), Minn. Stat. §§ 177.21-.35 (2016), for Rackner's decision to terminate him for "not properly sharing his tips." The issue presented is whether the MFLSA provides a private cause of action for an employee who is discharged for refusing to share gratuities. Because the plain language of Minn. Stat. § 177.27, subd. 8, expressly provides such a cause of action, we affirm.

### FACTS

Rackner employed Burt as a bartender from January 2007 to July 2014. In December 2014, Burt sued Rackner, claiming that Rackner terminated his employment in violation of Minn. Stat. § 177.24, subd. 3, which prohibits an employer from requiring an employee to contribute or share a gratuity received by the employee. The complaint alleged the following. At some point before the termination, Burt was told "that he needed to give more of his tips to the bussers, and that there would be consequences if that did not happen." Burt did not follow this directive. On July 21, 2014, Burt met with the co-owners of Rackner, who informed Burt that "he was being terminated because [he] was not properly sharing his tips with other staff." After the termination, Burt was "unable to find other employment."

Rackner answered the complaint and moved for judgment on the pleadings. The district court dismissed the complaint, concluding that the MFLSA "does not contemplate an action for wrongful discharge" because the statute does not contain specific language prohibiting an employer

from discharging an employee for refusing to share tips. Relying on our decision in *Dukowitz v. Hannon Sec. Servs.*, 841 N.W.2d 147 (Minn. 2014), the district court stated that "if the Legislature had intended for employees [to] be able to sue for wrongful discharge, it would have included that language explicitly in the MFLSA." Absent language to that effect, the district court refused to recognize a wrongful-discharge cause of action.

The court of appeals reversed, concluding that the MFLSA "unambiguously provides that the employee may seek wrongful-discharge damages, including back pay and other appropriate relief as provided by law." *Burt v. Rackner, Inc.*, 882 N.W.2d 627, 628 (Minn. App. 2016). The court of appeals noted that Minn. Stat. § 177.27, subd. 8, unambiguously provides that "[a]n employee may bring a civil action seeking redress for a violation ... of sections 177.21 to 177.44," which "broadly applies to any violation of the MFLSA, including a violation of [the tip-sharing provision in MFLSA]." *Burt*, 882 N.W.2d at 631-32. The court of appeals further observed that "[t]he statute also broadly permits a wronged employee to 'seek damages and other appropriate relief ... as otherwise provided by law.'" *Id.* at 632 (quoting Minn. Stat. § 177.27, subd. 8). Accordingly, the court concluded that Burt's complaint "states a claim upon which relief can be granted" and remanded to the district court for further proceedings. *Id.* at 631, 633.

We granted Rackner's petition for review and the amicus motions of the Minnesota Restaurant Association, the Minnesota Chapter of the National Employment Lawyers Association, and the Minnesota Management Attorney's Association.

## ANALYSIS

On appeal from a grant of a motion for judgment on the pleadings under Minn. R. Civ. P. 12.03, we "consider only the facts alleged in the complaint, accepting those facts as true and drawing all reasonable inferences in favor of the non-moving party." *Zutz v. Nelson*, 788 N.W.2d 58, 61 (Minn. 2010). We review a district court's decision on a Rule 12.03 motion de novo to determine whether "the complaint sets forth a legally sufficient claim for relief." *Id.* (quoting *Bodah v. Lakeville Motor Express, Inc.*, 663 N.W.2d 550, 553 (Minn. 2003)). Whether a statute provides a private cause of action also presents a question of statutory interpretation that we review de novo. *Larson v. Nw. Mut. Life Ins. Co.*, 855 N.W.2d 293, 301 (Minn. 2014).

At issue is whether the MFLSA provides a cause of action for an employee who is terminated for failing to share gratuities. Rackner argues that the MFLSA does not provide such a cause of action because (1) although the statute prohibits an employer from requiring an employee to share gratuities, it does not prohibit an employer from discharging an employee who refuses to do so, and (2) the statute does not contain any language that specifically allows an employee to sue for wrongful discharge in the context of tip sharing. By contrast, Burt contends that he may sue under the MFLSA because an employer violates Minn. Stat. § 177.24, subd. 3, when it discharges an employee for refusing to share tips, and Minn. Stat. § 177.27, subd. 8, allows an employee to sue for any violation of the statute, including a violation of Minn. Stat. § 177.24, subd. 3.

We agree with Burt, and hold that the language of the MFLSA expressly provides a cause of action for an employee who is terminated for failing to share tips. We consider each of Rackner's arguments in turn.

## I.

Rackner first contends that Burt does not have a claim under the MFLSA because, although Minn. Stat. § 177.24, subd. 3, forbids an employer from requiring employees to contribute or share gratuities, it does not prohibit employers from terminating employees who refuse to share tips. Rackner also maintains that Burt was not harmed by the requirement to share tips because he did not lose any tips; "indeed, the act of terminating [Burt] deprived [Rackner] of the power to compel, require, or coerce him to do anything." We disagree.

■■■ "The first step in statutory interpretation is to determine whether the statute's language, on its face, is ambiguous." *Christianson v. Henke*, 831 N.W.2d 532, 536 (Minn. 2013) (citation omitted) (internal quotation marks omitted). "A statute is only ambiguous if its language is subject to more than one reasonable interpretation." *Id.* at 537. In interpreting a statute, we give words and phrases "their plain and ordinary meaning." *In re Welfare of J.J.P.*, 831 N.W.2d 260, 264 (Minn. 2013).

Minnesota Statutes § 177.24, subd. 3, provides, in relevant part: "No employer may *require* an employee to contribute or share a gratuity." (Emphasis added.) The provision also states that although an employee may voluntarily agree to share gratuities, the agreement "must be made by the employees *without employer coercion or participation*." *Id.* (emphasis added).

The parties agree that this provision is unambiguous. And as Burt correctly states, to "require" means "[t]o impose an obligation on." *The American Heritage Dictionary of the English Language* 1492 (5th ed.); *see, e.g., Larson v. Nw. Mut. Life Ins. Co.*, 855 N.W.2d 293, 301 (Minn. 2014) ("We construe nontechnical words and phrases according to their plain and ordinary meanings and we often look to dictionary definitions to determine the plain meanings of words.") (citation omitted) (internal quotation marks omitted). In everyday language, threatening to terminate an employee for failing to do something imposes a "require[ment]" on the employee and, at the very least, constitutes coercion by the employer.

Nevertheless, Rackner contends that, although the statute prohibits employers from requiring or coercing employees to share gratuities, it allows employers to terminate employees who refuse to share tips. This interpretation of the statute is unreasonable. Here, "drawing all reasonable inferences in favor of the nonmoving party" on a Rule 12 motion, *Zutz*, 788 N.W.2d at 61, we assume that Rackner demanded that Burt share tips and threatened him with severe consequences, including discharge, if he refused. Thus, Rackner "impose[d] an obligation on" Burt to share his tips, in violation of Minn. Stat. § 177.24, subd. 3. Rackner improperly and coercively injected itself into a decision—whether employees will share gratuities—that the statute explicitly leaves to the discretion of employees. *Id.* Under Rackner's interpretation, an employer would violate the MFLSA only when its unlawful threat actually compels compliance by the employee. But nothing in the statute states that the employee must acquiesce in the gratuity-sharing mandate for a violation to occur. To the contrary, the statute is violated once the employer "require[s]" an employee to share a gratuity, whether the employee does so or not.

Indeed, were we to follow Rackner's logic, employers could lawfully circumvent other MFLSA protections by terminating employees who do not follow the employers' illegal requirements. For example, according to Minn. Stat. § 177.254, subd. 1, "[a]n employer must permit each employee who is working for eight or more consecu-

tive hours sufficient time to eat a meal." In other words, the statute prohibits an employer from forcing employees to work for eight consecutive hours without allowing them to take a lunch break. Nevertheless, based on Rackner's reasoning, an employer who unlawfully forbids its full-time employees from taking lunch breaks could lawfully terminate an employee for taking a break to eat lunch. Such an interpretation of Minn. Stat. § 177.24, subd. 3, which logically follows from Rackner's interpretation in this case, is unreasonable.

█ Therefore, because Minn. Stat. § 177.24, subd. 3, is subject to only one reasonable interpretation, we hold that Minn. Stat. § 177.24, subd. 3, unambiguously prohibits an employer from terminating an employee for refusing to share gratuities. *See Christianson*, 831 N.W.2d at 536-37.

## II.

█ Rackner next argues that Burt may not sue under the MFLSA because the statute does not expressly provide a cause of action for wrongful discharge arising out of an employee's refusal to share tips. Rackner argues that when the Legislature creates an exception to the common-law employment-at-will doctrine, it always does so "explicitly by prohibiting, or granting a cause of action for, discharge," such as in other provisions of the MFLSA or other statutes forbidding wrongful discharge. Therefore, according to Rackner, absent express statutory language to that effect, the MFLSA does not provide a cause of action for an employee who refuses to share tips. We disagree.

To be sure, the MFLSA does not use the words "wrongful discharge" in connec-

tion with the sharing of tips. But, as explained above, Minn. Stat. § 177.24, subd. 3, explicitly prohibits an employer from terminating an employee for refusing to share tips. This prohibition, combined with Minn. Stat. § 177.27, subd. 8, which provides a broad, private cause of action for *any* violation of the statute, expressly[1] authorizes an employee to sue for wrongful discharge arising out of a refusal to share tips.

█ In Minnesota, employment relationships are generally at-will, meaning "that an employer may discharge an employee for any reason or no reason and that an employee is under no obligation to remain on the job." *Dukowitz*, 841 N.W.2d at 150 (citation omitted) (internal quotation marks omitted). Nevertheless, the Legislature can regulate and modify the common-law at-will doctrine and create statutory exceptions. *See, e.g.*, Minn. Stat. §§ 176.82, subd. 1 (2016) ("Any person discharging ... an employee for seeking workers' compensation benefits ... is liable in a civil action...."); 181.932, subd. 1 (2016) ("An employer shall not discharge ... an employee [because of listed whistleblowing reasons.]"). The Legislature abrogates the common law by either "express wording or necessary implication." *Dukowitz*, 841 N.W.2d at 154; *see Larson*, 855 N.W.2d at 301 ("A statute gives rise to a civil cause of action only if the language of the statute explicitly creates one or the language clearly implies that the Legislature intended to create a cause of action").

We have recognized a narrow common-law public-policy exception to the employment-at-will doctrine, allowing an employee to bring an action for wrongful dis-

---

1. We agree with the dissent that the Legislature has not provided a cause of action *by necessary implication* for an employee who is terminated for refusing to share gratuities. Rather, the Legislature has expressly provided such a cause of action in Minn. Stat. § 177.27, subd. 8.

charge at common law *only* where "a termination is the result of an employee's refusal to do an act that the employee, in good faith, believes to be illegal." *Dukowitz*, 841 N.W.2d at 151; *Phipps v. Clark Oil & Ref. Corp.*, 408 N.W.2d 569, 571 (Minn. 1987). But Burt does not argue for the creation of a new cause of action under this common-law exception; rather, he claims that the MFLSA itself already contains a cause of action for an employee who is terminated for failing to share gratuities. Indeed, Burt admits that he has recourse only if we decide that the MFLSA allows an employee to sue after being terminated for refusing to share tips.

It is true that although the MFLSA does not explicitly prohibit or punish wrongful discharge with regard to tip sharing, it does expressly prohibit or punish wrongful discharge in other contexts. Specifically, Minn. Stat. § 177.24, subd. 1(c)-(e), prohibits an employer from displacing an employee earning regular minimum wages to hire an employee earning lower minimum wages. And Minn. Stat. § 177.32, subd. 2, provides that an employer is subject to fines between $700 and $3,000 if convicted of discharging any employee in retaliation for certain whistleblowing activities.

It is also true that the Legislature has explicitly prohibited discharging employees in some circumstances, or specifically provided a cause of action for wrongful discharge, in other statutes. *See* Minn. Stat. §§ 144.4196, subd. 2(a) (2016) ("An employer shall not discharge ... a[n] ... employee ... because the employee has been in isolation or quarantine."); 176.82, subd. 1 ("Any person discharging ... an employee for seeking workers' compensation benefits ... is liable in a civil action...."); 181.932, subd. 1 ("An employer shall not discharge ... an employee ... because [of listed whistleblowing reasons]"); 182.669, subd. 1 (2016) ("An employee may bring a private action in the district court for relief under this section," which protects "[a]ny employee believed to have been discharged ... because the employee has exercised any right authorized under the provisions of [OSHA]"); 518B.01, subd. 23(a) (2016) ("An employer shall not discharge ... an employee ... because the employee took reasonable time off from work to obtain or attempt to obtain relief under this chapter.").

Nevertheless, we conclude that the MFLSA expressly provides a cause of action for an employee who is terminated for failing to share gratuities through the broad cause of action explicitly provided by Minn. Stat. § 177.27, subd. 8.[2] The

**2.** The dissent contends that it is "surprising[]" for us to hold that the Legislature has expressly provided a cause of action for wrongful discharge in the context of tip sharing because we also acknowledge that the statute does not explicitly prohibit or punish wrongful discharge arising out of a failure to share tips. But the Legislature need not use specific language when drafting legislation in general, or, as it did here, when expressly abrogating the common-law employment-at-will rule through Minn. Stat. § 177.27, subd. 8. It is not our role to tell the Legislature how to write a statute. *See Wilbur v. State Farm Mut. Auto. Ins. Co.*, 892 N.W.2d 521, 525 (Minn. 2017) ("[I]t is our job to interpret the

Act as written and it is the Legislature's job to draft legislation, as it deems appropriate." (quoting *KSTP-TV v. Metro. Council*, 884 N.W.2d 342, 349 n.4 (Minn. 2016))).

The dissent also mischaracterizes our holding by stating that (1) we conclude that Minn. Stat. § 177.24, subd. 3, abrogates the common-law employment-at-will rule, and (2) we are essentially "using the remedies provision to expand the scope of actionable violations under the MFLSA," implying that we reach this decision by relying on the remedies provision in the MFLSA. To the contrary, our position is that Minn. Stat. § 177.27, subd. 8—not Minn. Stat. § 177.24, subd. 3—expressly provides a

MFLSA contains no language prohibiting an employee from suing an employer for wrongful discharge resulting from the employee's refusal to share tips. To the contrary, Minn. Stat. § 177.27, subd. 8, unambiguously allows an aggrieved employee to sue for *any* violation of the statute, which creates a broad, private right of action in favor of employees harmed by an employer's violation of the MFLSA. *See Milner v. Farmers Ins. Exch.*, 748 N.W.2d 608, 614-15 (Minn. 2008) (explaining that Minn. Stat. § 177.27, subd. 8, provides a cause of action for violations of any MFLSA provision that is "capable of being violated by an employer;" in other words, a provision that contains "an affirmative requirement imposed upon the employer to take or not take certain action under the Act"). It also allows an aggrieved employee to recover any appropriate civil remedies, including back pay, a type of damages typically awarded in wrongful-discharge actions. Minn. Stat. § 177.27, subd. 8 ("[I]n an action under this subdivision the employee may seek damages and other appropriate relief provided by subdivision 7 and otherwise provided by law."); *id.*, subd. 7 (allowing aggrieved parties to recover "back pay, gratuities, and compensatory damages, less any amount actually paid to the employee by the employer, and for an additional equal amount as liquidated damages"); *see* Minn. Stat. § 268.035, subd. 3 (2016) (" 'Back pay' means a payment by an employer to an employee or former employee for lost wages."). Accordingly, because Minn. Stat. § 177.24, subd. 3, prohibits an employer from terminating an employee who refuses to share gratuities, the aggrieved employee may sue an employer for any resulting damages under Minn. Stat. § 177.27, subd. 8.

None of the MFLSA provisions that Rackner identifies as explicitly prohibiting or punishing wrongful discharge undermines our conclusion that the Legislature also intended to create a cause of action for wrongful discharge in the context of tip sharing. Rackner argues that the explicit prohibitions on discharge in those provisions clearly indicate that the Legislature only meant to prohibit discharge when plainly stated in specific provisions. However, there are other reasons for the explicit prohibitions on discharge in certain provisions. For example, Minn. Stat. § 177.24, subd. 1(c)-(e), prohibits the displacement of one employee to hire another employee at lower minimum wage to ensure that such a displacement would explicitly violate the MFLSA, thus triggering the potential for civil recourse under the MFLSA. Similarly, Minn. Stat. § 177.32, subd. 2, fines employers for discharging an employee under specified circumstances, but does not preclude a civil cause of action in addition to such fines. Indeed, Minn. Stat. § 177.32, subd. 2(2), protects an employee who "has instituted or will institute a proceeding under or related to sections 177.21 to 177.435"—a description that would encompass an employee who filed a civil suit under Minn. Stat. § 177.27, subd. 8. In addition, as demonstrated by other provisions of the MFLSA, the penalties provided in Minn. Stat. § 177.32 do not preclude an employee from seeking other remedies. *See, e.g.,* Minn. Stat. §§ 177.30 (b) (providing administrative fines for an employer who violates the section "in addition to any penalties provided under section 177.32, subdivision 1"); 177.31 (same). Therefore, none of the MFLSA provisions that explicitly prohibit or punish wrongful discharge foreclose a

cause of action that abrogates the common-law rule here. And our conclusion stands on a firm foundation: the broad and all-inclusive language of Minn. Stat. § 177.27, subd. 8—not simply the remedies available under Minn. Stat. § 177.27, subd. 7.

civil cause of action for an employee who is terminated for refusing to share gratuities.

Rackner argues that the only remedy available for a violation of the tip-sharing provision is that "the employer may be compelled 'to pay restitution in the amount of the gratuities diverted,' Minn. Stat. § 177.24, subd. 3, and that the employee may seek double damages and attorneys' fees remedies, *see* Minn. Stat. § 177.27, subds. 8, 10." We disagree. According to Minn. Stat. § 177.24, subd. 3, "[t]he commissioner may require the employer to pay restitution in the amount of the gratuities diverted." But this sentence does not prevent an employee from relying on the remedies in subdivision 8 of section 177.27. Although subdivision 3 of section 177.24 provides *administrative* remedies, subdivision 8 of section 177.27, which is titled "Court actions; suits brought by private parties," offers civil relief. *Compare* Minn. Stat. § 177.24, subd. 3, *with* Minn. Stat. § 177.27, subd. 8 ("An employee may bring a civil action seeking redress for a violation or violations of sections 177.21 to 177.44 directly to district court."). The remedies offered by these two provisions, in other words, are not mutually exclusive.

Rackner also contends that recognizing a cause of action for an employee who is discharged for failing to share tips will expand the common-law exception to the employment-at-will doctrine, contrary to our holding in *Dukowitz*. But *Dukowitz* is inapposite because the unemployment-insurance statutes under which the employee applied for unemployment benefits do not provide a broad, private cause of action like the one in the MFLSA, *see* Minn. Stat. ch. 268 (2016); Minn. Stat. § 268.184 ("Em-

ployer Misconduct; Penalty"). Indeed, Minn. Stat. ch. 268, which governs unemployment insurance, does not authorize a private right of action at all. Instead, it provides for an administrative determination of disputes by an unemployment law judge, Minn. Stat. §§ 268.101-.105, and designates the Department of Employment and Economic Development as "the primary responding party to any judicial action involving an unemployment law judge's decision," Minn. Stat. § 268.105, subd. 7(e).[3] Because Dukowitz never argued that she had a statutory claim for wrongful discharge, *Dukowitz* is inapplicable here.

Furthermore, our holding today is consistent with our characterization of Minn. Stat. § 181.75 (2016), albeit in dictum, in *Nelson v. Productive Alts., Inc.*, 715 N.W.2d 452, 454 n.1 (Minn. 2006). In *Nelson*, we considered whether the Minnesota Whistleblower Act abrogated the common-law exception to the employment-at-will doctrine. After introducing the employment-at-will doctrine and noting that "there are several statutory exceptions to the at-will rule," we provided three examples of statutory exceptions in a footnote. *Id.* at 454 & n.1. One of the listed examples was Minn. Stat. § 181.75, the polygraph statute, which we described in a parenthetical as "providing a cause of action for employees who are discharged in retaliation for refusing to take a lie-detector test." *Id.* at 454 n.1.

Similar to the MFLSA, the polygraph statute does not specifically prohibit an employer from discharging an employee for refusing to take a polygraph test, but it does forbid an employer from "directly or indirectly solicit[ing] or requir[ing] a poly-

---

**3.** Contrary to the dissent's assertion, we do not "distinguish[ ] *Dukowitz* on the basis that the discharged employee was not arguing that the Legislature had created a statutory cause of action in the unemployment context."

Rather, as stated above, *Dukowitz* is inapposite because the statute at issue there—unlike the MFLSA—did not provide a broad, private cause of action.

graph, voice stress analysis, or any test purporting to test the honesty of any employee or prospective employee." Minn. Stat. § 181.75, subd. 1. The statute also broadly provides that "any person injured by a violation of this section may bring a civil action to recover any and all damages recoverable at law." *Id.*, subd. 4. In *Nelson*, we described such a statute as providing a cause of action for an employee who is discharged for refusing to take a lie-detector test. 715 N.W.2d at 454 n.1. Therefore, our interpretation of the MFLSA today is consistent with our interpretation of the polygraph statute there.

Accordingly, we hold that the MFLSA, by express wording, provides a cause of action for an employee who is terminated for refusing to share tips, because Minn. Stat. § 177.27, subd. 8, offers an aggrieved employee a broad, private cause of action for *any* violation of the MFLSA and allows the employee to recover *any* damages or appropriate relief provided by law, including back pay. We agree with the dissent that "making legislative policy is not the court's role." Contrary to the dissent's assertion that we are "usurping the policy-making role of the Legislature by rewriting Minn. Stat. § 177.24," we do not create a cause of action today. Rather, we are simply interpreting and applying the plain language of Minn. Stat. § 177.27, subd. 8. Burt has a cause of action under the MFLSA solely because Minn. Stat. § 177.27, subd. 8, expressly provides one. If the Legislature wants to change the law and make a different policy determination, it can do so. Our responsibility is to interpret and follow the statute's plain language, and that is what we have done here.

## CONCLUSION

For the foregoing reasons, we affirm the decision of the court of appeals.

Affirmed.

Dissenting, Gildea, C.J., Anderson, J.

## DISSENT

GILDEA, Chief Justice (dissenting).

Minnesota has long recognized the common-law rule of employment at will. Consistent with this principle, an employer may terminate an employee for any or no reason and cannot be sued for wrongful discharge. *See Cederstrand v. Lutheran Bhd.*, 263 Minn. 520, 117 N.W.2d 213, 221 (1962). We have repeatedly held that the Legislature abrogates the common law only through express wording or by necessary implication. The majority admits that the statute at issue "does not explicitly prohibit or punish wrongful discharge." Yet, the majority surprisingly holds that the Legislature abrogated the common-law employment-at-will rule by express wording. Because this holding represents a fundamental departure from our precedent and Minnesota's employment-at-will rule, I respectfully dissent.

### I.

At issue in this appeal is whether the Legislature—through the Minnesota Fair Labor Standards Act (MFLSA), Minn. Stat. §§ 177.21–.35 (2016)—abrogated the common-law rule of employment at will. The "employment-at-will rule—foundational in American employment law for well over a century—protects the freedom of the employer and employee to contract." *Dukowitz v. Hannon Sec. Servs.*, 841 N.W.2d 147, 152 (Minn. 2014). Under the rule, an "employer-employee relationship is terminable at the will of either; the employer can summarily dismiss the employee, the employee is under no obligation to remain at the job." *Cederstrand*, 117 N.W.2d at 221.

The majority concludes that Minn. Stat. § 177.24, subd. 3, abrogates the common-

law rule. This statute provides that employers may not require employees to share tips:

No employer may require an employee to contribute or share a gratuity received by the employee with the employer or other employees or to contribute any or all of the gratuity to a fund or pool operated for the benefit of the employer or employees. This section does not prevent an employee from voluntarily sharing gratuities with other employees.

Minn. Stat. § 177.24, subd. 3. The statute also specifies a remedy. If the employer violates this provision, the commissioner of labor and industry "may require the employer to pay restitution in the amount of the gratuities diverted." *Id.* I disagree with the majority that this statute overcomes the common-law employment-at-will rule.

## A.

We presume that "statutes are consistent with the common law, and if a statute abrogates the common law, the abrogation must be by express wording or necessary implication." *Ly v. Nystrom*, 615 N.W.2d 302, 314 (Minn. 2000). The majority concedes that "the MFLSA does not explicitly prohibit or punish wrongful discharge with regard to tip sharing." In the absence of an express statement creating a cause of action for wrongful discharge, the statute does not overcome the common law by "express wording." *Id.*

The Legislature has demonstrated time and time again that it knows how to abrogate the common-law employment-at-will rule through the "express wording" our standard requires. *Id.* For example, the Legislature has explicitly provided for a cause of action for wrongful or retaliatory discharge under the Workers' Compensation Act, Whistleblower Act, Occupational

Safety and Health Act, Human Rights Act, and Domestic Abuse Act, among many other acts. *See, e.g.,* Minn. Stat. § 144.4196, subd. 2(a), (b) (2016) (providing that an "employer shall not discharge" an employee "because the employee has been in isolation or quarantine" and providing "a civil action for recovery of lost wages"); Minn. Stat. § 176.82, subd. 1 (2016) (providing that "[a]ny person discharging ... an employee for seeking workers' compensation benefits ... is liable in a civil action"); Minn. Stat. §§ 181.932, subd. 1, 181.935 (2016) (providing that an "employer shall not discharge" an employee for making protected reports under the Whistleblower Act and providing for "a civil action" for violations of section 181.932); Minn. Stat. §§ 181.953, subd. 10, 181.956, subd. 2 (2016) (providing that an "employer shall not discharge an employee" for specified test results under the statutes governing drug and alcohol testing and that an employer may be liable "in a civil action"); Minn. Stat. § 182.669, subd. 1 (2016) (providing that an "employee may bring a private action in the district court for relief under this section," which covers employees "discharged" for asserting rights involving occupational safety and health standards); Minn. Stat. §§ 192.325–.36 (2016) (providing that "[a]n employer may not ... discharge" an employee "because of the membership of that employee's spouse, parent, or child in the military forces" and that the employee "may bring an action to recover actual damages"); Minn. Stat. §§ 363A.08, subd. 2(2), 363A.33 (2016) (providing a cause of action for an employee seeking redress for unfair employment practices, including employees who are "discharge[d]" because of race, color, creed, religion, national origin, sex, and other specified statuses and conditions); Minn. Stat. § 518B.01, subd. 23 (2016) (providing that an "employer shall not discharge" an employee for taking

"reasonable time off from work to obtain or attempt to obtain relief" under the Domestic Abuse Act and providing "a civil action for recovery of damages"); Minn. Stat. §§ 550.136, subd. 13, 551.06 (2016) (providing that an "employer shall not discharge" an employee as a result of an authorized earnings levy and that a court may order reinstatement and other appropriate relief); Minn. Stat. § 571.927 (2016) (providing that an "employer shall not discharge ... an employee as a result of an earnings garnishment" and providing for "a civil action"); Minn. Stat. § 593.50 (2016) (providing that an employee who has been "discharge[d]" for serving as a juror "may bring a civil action for recovery of wages lost" and "for an order requiring the reinstatement of the employee"); Minn. Stat. § 609.748, subd. 10 (2016) (providing that an "employer shall not discharge" an employee for taking "reasonable time off from work to obtain or attempt to obtain" a harassment restraining order and that the employee "may bring a civil action for recovery of damages"); Minn. Stat. § 611A.036 (2016) (providing that an "employer shall not discharge" a crime victim or witness for taking "reasonable time off from work to attend a criminal proceeding" and providing for "a civil action").

And even more importantly for this case, the Legislature has specifically addressed wrongful discharge in other provisions of the MFLSA. *See* Minn. Stat. § 177.32, subd. 2 (providing that an employer shall be fined if convicted of discharging an employee for complaining about unpaid wages, instituting a proceeding under the MFLSA, or testifying in any such proceeding). Even the very statute at issue here contains express language that prohibits an employer from taking "any action to displace an employee" in order to hire another employee at the minimum wage. Minn. Stat. § 177.24, subd. 1(c)–(e).

As the majority concedes, the tip-sharing statute provides nothing even remotely similar to the express language referencing "discharge" in all of these other statutes. The majority nevertheless concludes that there is an express overruling of the common-law employment-at-will rule because the MFLSA provides a broad remedy for violation of its provisions in Minn. Stat. § 177.27, subd. 8. The majority essentially uses the remedies provision to expand the scope of actionable violations under the MFLSA. The majority's bootstrapping analysis fails.

To support its reliance on the remedies provision in the MFLSA, the majority rewrites our "express wording" standard. Specifically, the majority asserts that no "specific language" is needed for the Legislature to abrogate the common law. The majority is wrong. We require that the statute make "express reference" to the common-law principle at issue before we can conclude that the Legislature has abrogated the principle. *Brekke v. THM Biomedical, Inc.*, 683 N.W.2d 771, 776 (Minn. 2004); *see also Rosenberg v. Heritage Renovations, LLC*, 685 N.W.2d 320, 328–29 n.7 (Minn. 2004) (identifying a workers' compensation statute as an example of abrogation by express wording because that statute provided that " '[t]he liability of an employer prescribed by this chapter is exclusive and in the place of any other liability to such employee' " (quoting Minn. Stat. § 176.031 (2002))). That standard is plainly not met here. Indeed, the majority cannot point to *any* language in the tip-sharing statute, Minn. Stat. § 177.24, subd. 3, that references wrongful discharge (unlike all of the many other statutes discussed above that do specifically address wrongful discharge) or the employment-at-will principle.

The remedies statute likewise says nothing about wrongful discharge. Under

Minn. Stat. § 177.27, subd. 8, "[a]n employee may bring a civil action seeking redress for a violation or violations of sections 177.21 to 177.44 directly to district court" and "may seek damages and other appropriate relief provided by subdivision 7 and otherwise provided by law." The majority suggests that because the relief provided by subdivision 7 includes "back pay," Minn. Stat. § 177.27, subd. 7, and because back pay is "a type of damages typically awarded in wrongful-discharge actions," the MFLSA "expressly provides a cause of action for an employee who is terminated for failing to share tips." The problem with the majority's express-wording analysis, however, is that subdivision 8 does not reference wrongful discharge or otherwise purport to prohibit employers from terminating employees. This section provides a cause of action only for employees seeking redress "for a *violation or violations* of sections 177.21 to 177.44." Minn. Stat. § 177.27, subd. 8 (emphasis added). Therefore, in order for subdivision 8 to be at all relevant to the abrogation-by-express-wording question, there must first be a violation of some other provision in the MFLSA. In other words, the MFLSA must prohibit employers from terminating employees for tip sharing and then if such a prohibition was violated, subdivision 8 might be relevant to the abrogation question. But there is no such violation in this case.

This is so because the statute at issue, Minn. Stat. § 177.24, subd. 3, does not prohibit employers from terminating employees; it merely says that an employer cannot require tip sharing. Subdivision 3, in fact, makes no explicit reference to discharge and the remedy specified in the statute is not a cause of action for wrongful discharge. The remedy is limited to "restitution in the amount of the gratuities diverted." *Id.* In short, the tip-sharing statute does not say, by "express word-

ing," *Ly,* 615 N.W.2d at 314, that an employer cannot discharge an employee for refusing to share tips. Without the prohibition in subdivision 3, the violation the majority needs to sustain its reliance on subdivision 8 is completely lacking and its analysis falls apart.

Unconstrained by the plain language of the statutes or by our precedent, the majority supports its desired outcome by concluding that because the MFLSA "contains no language *prohibiting* an employee from suing an employer for wrongful discharge resulting from the employee's refusal to share tips," the statute must permit an employee to sue. (emphasis added). This conclusion—looking at whether there is specific language that expresses the Legislature's intention *to retain* the common law rather than an intention *to abrogate* the common law—represents a drastic shift in our "express-wording" analysis.

I would not rewrite our standard; I would simply apply it. As we recognized in *Dukowitz,* after citing a variety of statutes that "explicitly furnished a civil remedy for retaliation," the "Legislature's policy choice to create a civil cause of action for one group of employees . . . but not another" demonstrates that "the Legislature 'knows how' to accomplish a particular objective if it wishes to do so." *Dukowitz,* 841 N.W.2d at 154 & n.4 (quoting *In re Hubbard,* 778 N.W.2d 313, 323 (Minn. 2010)). I would follow this same analysis here. Because the Legislature knows how to create a cause of action for wrongful discharge but did not create such a cause of action for violations of the tip-sharing provision, I conclude that the MFLSA does not expressly abrogate the common-law employment-at-will rule when it comes to tip sharing.

### B.

Because the Legislature did not expressly abrogate the common-law employment-

at-will rule in the MFLSA, it is necessary to determine whether the MFLSA by necessary implication abolishes the common-law employment-at-will rule. Apparently recognizing that the necessary-implication standard is not met, the majority does not even attempt to analyze the MFLSA against this standard. I agree with the majority that the necessary-implication standard is not met here.

Our cases recognize the rigorous nature of the necessary-implication standard. For example, in *Urban v. American Legion Dept. of Minnesota*, the issue was whether the Legislature abrogated the common-law doctrine of respondeat superior through passage of the Civil Damages Act, Minn. Stat. §§ 340A.501, .801 (2004). 723 N.W.2d 1, 5 (Minn. 2006). Because a provision in the Act made employers "responsible" for their employees' sales of alcohol, Minn. Stat. § 340A.501, we held that the statute, by necessary implication, abrogated the common law. *Urban*, 723 N.W.2d at 5. To conclude otherwise, we said, would render the provision in the statute imposing responsibility on employers based on their employees' sales—Minn. Stat. § 340A.501—superfluous. 723 N.W.2d at 5; *see also Shaw Acquisition Co. v. Bank of Elk River*, 639 N.W.2d 873, 877 (Minn. 2002) (declining to hold that a statute abrogated a common-law rule where the statute did not "specifically address" the subject or "contain a clear mandate" inconsistent with the common-law rule).

In this case, the MFLSA does not specifically address discharge in the tip-sharing context, and maintaining the common-law employment-at-will rule does not render any provision in the MFLSA superfluous or violate a clear mandate in the Act. Even though employers cannot be sued for discharging employees who refuse to share tips, employers are still prohibited from requiring employees to share tips, and they can be punished for violating this statutory prohibition. When an employer violates the tip-sharing provision, Minn. Stat. § 177.24, subd. 3, states that the commissioner of labor and industry "may require the employer to pay restitution in the amount of the gratuities diverted." The Legislature also provided other civil, administrative, and criminal remedies. For example, the commissioner may "order the employer to cease and desist from engaging in the violative practice," and an employee may bring a civil action to recover the diverted gratuities and "an additional equal amount as liquidated damages." Minn. Stat. § 177.27, subds. 7–8; *see also* Minn. Stat. § 177.32, subd. 1(9) (providing that an employer that "violates any provision of sections 177.21 to 177.44" is "guilty of a misdemeanor"). In light of this broad range of remedies, there can be no necessary implication that the Legislature intended to create a cause of action for wrongful discharge. To the contrary, by holding that the MFLSA "provides a cause of action for an employee who is terminated for failing to share tips," the majority has "create[d] a remedy beyond the one that the Legislature has already provided." *Dukowitz*, 841 N.W.2d at 154.

Because there is no basis to conclude that the Legislature intended to abrogate the employment-at-will rule in the tip-sharing context, I would reverse the court of appeals and reinstate the judgment of the district court.

II.

As set forth in section I above, the analysis in this case is relatively straightforward if one follows the plain language of the tip-sharing statute and our precedent. The majority takes a different path and in doing so makes policy judgments that belong to the Legislature. The majority holds that "Minn. Stat. § 177.24, subd. 3, unam-

biguously prohibits an employer from terminating an employee for refusing to share gratuities." At the same time, however, the majority freely admits that the MFLSA does not contain any language concerning discharge in the context of tip sharing. As discussed above, although Minn. Stat. § 177.24, subd. 3, does provide that an employer may not require employees to share tips, the statute does not provide that an employer may not discharge employees for asserting their right not to share tips. If the Legislature had intended to make terminating an employee for refusing to share tips a violation of the MFLSA, the Legislature "would have clearly so stated in the law." *State ex rel. Verbon v. Cty. of St. Louis.*, 216 Minn. 140, 12 N.W.2d 193, 196 (1943) (refusing to construe a statute "as abrogating a rule of the common law unless such intention is clearly expressed").

Instead of examining legislative intent to abrogate the common-law rule of employment at will, as our precedent requires, the majority opines that it would be unreasonable to allow employers to circumvent the protections of the MFLSA "by terminating employees who do not follow the employers' illegal requirements," such as requiring employees to share tips. Therefore, the majority holds that "Minn. Stat. § 177.24, subd. 3, unambiguously prohibits an employer from terminating an employee for refusing to share gratuities."

The majority effectively concludes that it is unreasonable for the Legislature to provide certain remedies when an employer unlawfully requires employees to share tips—such as the recovery of diverted tips and injunctive relief—but not provide a cause of action for employees who were terminated for failing to share tips. The Legislature's choice to provide certain

remedies, but not others (such as a cause of action for wrongful discharge), is a matter of legislative policy. According to the majority, it is unreasonable to interpret the statute in a way that would allow an employer to terminate an employee for refusing to share tips. But the employer's freedom to terminate an employee for any reason—even "a bad reason"—is a key aspect of the common-law employment-at-will rule. 17 Stephen F. Befort, *Minnesota Practice—Employment Law & Practice* § 13:1 (3d ed. 2011) ("Briefly stated, employment-at-will means that an employer can fire an employee for a good reason, for a bad reason, or for no reason.").

Our prior decisions have made clear that it is up to the Legislature—not our court—to establish any public policy limitations to the employment-at-will doctrine. *Dukowitz*, 841 N.W.2d at 152–53; *Nelson v. Productive Alts., Inc.*, 715 N.W.2d 452, 457 n.5 (Minn. 2006). We explained that the decision to provide a cause of action for wrongful discharge is precisely the kind of policy determination that is properly left to the Legislature. *Dukowitz*, 841 N.W.2d at 153 (noting the court's "hesitation ... to declare the public policy of the state in employer-employee relationships," particularly when the issue implicates "the common-law, employment-at-will rule"). For example, in *Dukowitz*, we refused to recognize a cause of action arising from an employer's termination of an employee who applied for unemployment benefits, despite a statute that expressly prohibits an employer from obstructing or impeding an application for unemployment benefits, Minn. Stat. § 268.192, subd. 1 (2016). 841 N.W.2d at 153–54. We "decline[d] to expand the public-policy exception to the employment-at-will rule," explaining that "the Legislature has already delineated the consequences" for a statutory violation, includ-

ing "an extensive scheme of administrative and criminal penalties." *Id.* at 153.[1]

Contrary to *Dukowitz*, the majority usurps the policymaking role of the Legislature by rewriting Minn. Stat. § 177.24 to prohibit an employer from terminating an employee for refusing to share tips. But making legislative policy is not the court's role. It is the court's "role to rely on what the Legislature intended"—not "what may appear to be supported by public policy." *Dahlin v. Kroening*, 796 N.W.2d 503, 508 (Minn. 2011); *see also Caldas v. Affordable Granite & Stone, Inc.*, 820 N.W.2d 826, 836 (Minn. 2012) (stressing that "the court's role" in interpreting an unambiguous statute "is to enforce the language of the statute and not explore the spirit or purpose of the law").

Even more alarmingly, the majority's rationale will result in the judicial creation of a cause of action for wrongful discharge for the violation of any MFLSA provision that imposes a requirement on an employer—and indeed, virtually any statutory provision that imposes a requirement on

an employer—without the requisite showing of express wording or necessary implication to abrogate Minnesota's employment-at-will rule.[2] In sum, the majority makes a drastic change to the common-law employment-at-will rule in Minnesota that undermines our precedent and exceeds our authority. *See Donnelly v. Minneapolis Mfg. Co.*, 161 Minn. 240, 201 N.W. 305, 307 (1924) ("Courts are not permitted by construction to carry a statute, particularly one in derogation of the common law, beyond its clearly defined scope.").

### III.

Applying the plain language of Minn. Stat. § 177.24, subd. 3, I conclude that the Legislature has not by express language or necessary implication abrogated the common-law employment-at-will rule. Therefore, because the MFLSA does not provide a cause of action for wrongful discharge in the context of tip sharing, I would reverse the court of appeals and reinstate the judgment of the district court.

---

**1.** Although the majority distinguishes *Dukowitz* on the basis that the discharged employee was not arguing that the Legislature had created a statutory cause of action in the unemployment context, the majority's reasoning here is fundamentally at odds with the reasoning underlying our decision in *Dukowitz*. In *Dukowitz*, we indicated that the Legislature is better "equipped to balance the competing interests of employers, employees, and the public to determine whether, and when, an employer violates the public policy of the state by discharging an employee." 841 N.W.2d at 153. But then when the Legislature has made that policy determination and elected to provide other remedies for an employer's violation of the tip-sharing provision, the majority holds that it is unreasonable for the Legislature to decline to provide a cause of action for wrongful discharge. *Id.* (recognizing that a judicially created cause of action "is particularly inappropriate when the Legis-

lature has already provided other remedies to vindicate the public policy of the state").

**2.** The majority points to the polygraph statute, Minn. Stat. § 181.75 (2016), as an example of a statutory exception to the employment-at-will rule, citing our decision in *Nelson v. Productive Alternatives, Inc.*, 715 N.W.2d 452 (Minn. 2006). Although we described the polygraph statute in a parenthetical as "providing a cause of action for employees who are discharged in retaliation for refusing to take a lie-detector test," *Id.* at 454 n.1, the majority acknowledges that the polygraph statute "does not specifically prohibit an employer from discharging an employee for refusing to take a polygraph test," and the majority acknowledges that our description of the statute in *Nelson* was "dictum." The description of the polygraph statute in *Nelson* was, unfortunately, a mischaracterization of the statute, but in any event, the description has no precedential value.

ANDERSON, Justice (dissenting).

I join in the dissent of Chief Justice Gildea.